493 So.2d 1170 (1986)
Karen MYERS, Individually and as Administratrix of the Estate of Her Minor Son, Samuel Todd Rodgers
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Les Reynolds.
No. 86-C-0618.
Supreme Court of Louisiana.
September 8, 1986.
Norman Sisson, Sharon Lyles, Lawrence Durant, Baton Rouge, for applicant.
Joseph Olinde, Jr., Gaudin, Olinde & Spedale, Paul Marks, Jr., Baton Rouge, for respondent.
MARCUS, Justice.
Karen Myers, individually and on behalf of her minor son, Samuel Todd Rodgers, filed suit against the State of Louisiana, through the Department of Transportation and Development (DOTD) to recover damages for injuries sustained by Todd when the car in which he was riding ran off the highway and into a tree.[1]
On November 1, 1981, at about 5:30 a.m., Donnie Brister (age 19), a neighborhood friend, came by Karen Myers' home to pick up Todd (age 11) to go squirrel hunting. Donnie was an hour late and, according to Mrs. Myers, acted groggy and confused. He testified that he had slept only a few hours the night before after having gone to a party at the Texas Dance Hall where he had drunk two or three beers. After Donnie *1171 and Todd had completed the last minute preparations for the hunting trip, they ate a quick breakfast, and headed north out of Baton Rouge on Greenwell Springs Road, Highway 37. Donnie was driving, and Todd was riding in the passenger seat. According to Donnie, as he approached the Greenwell Springs Hospital, he saw a fourdoor white sedan about 100 yards away coming directly toward him and straddling the center line. Although the oncoming vehicle was obstructing his lane, Donnie did not honk his horn, flash his headlights, apply the brakes or take his foot off the accelerator. When the southbound vehicle did not correct its course and was within 30 yards, Donnie took evasive action by swerving right. This maneuver caused his car to leave the roadway. It traveled along the shoulder for about 10 feet before its right wheels began to slide down the slope of a roadside ditch. Donnie testified that he tried to steer the car back onto the roadway but it would not respond. It continued forward for 87 feet and then smashed into a large oak tree located on the right side of the ditch. The force of this collision flipped the car over and propelled it up the inside bank of the ditch, across the northbound lane and into the southbound lane where it came to rest. The accident occurred at about 6:30 a.m. The four-door sedan did not stop and has not been identified. Todd sustained severe injuries to the left side of his face. Donnie was the only witness to the accident. Todd had no recollection of the events.
After trial on the merits, the trial judge rendered judgment in favor of Karen Myers, individually and on behalf of her son, against DOTD in the sum of $85,000, together with legal interest and court costs. He apportioned the fault, 25% to DOTD and 75% to the unidentified oncoming motorist. Since the unidentified motorist was not a party to the suit, DOTD was cast for the total amount of the award. DOTD appealed. The court of appeal affirmed with one judge dissenting. DOTD applied for a rehearing which was granted for the limited purpose of clarifying the original opinion. On rehearing, the court of appeal affirmed its original decision with one judge dissenting.[2] On DOTD's application, we granted certiorari to review the correctness of that decision.[3]
The issues presented for our consideration are whether DOTD is liable to plaintiff for the injuries sustained by Todd in the automobile accident, and, if so, whether the trial court's allocation of 25% of the fault to DOTD was excessive.
Plaintiff alleges that DOTD is strictly liable for Todd's injuries under La. Civ.Code art. 2317.[4] Alternatively, she asserts that DOTD's negligent acts caused the accident and that therefore DOTD is liable under La.Civ.Code art. 2315.[5] Under both articles, liability hinges on whether the defendant has breached his duty to the plaintiff. While the basis for determining the existence of the duty is different in art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).[6] DOTD's *1172 duty to travelers is to keep the highways and their shoulders in a reasonably safe condition. LeBlanc v. State, 419 So.2d 853 (La.1982); Sinitierre v. Lavergne, 391 So.2d 821 (La.1980); State Farm Mut. Auto. Ins. Co. v. Slaydon, 376 So.2d 97 (La.1979). Whether DOTD had breached this duty, that is, whether the roadway and shoulders at the scene of the accident were in an unreasonably dangerous condition will depend upon the particular facts and circumstances of each case.[7]
Greenwell Springs Road, which is lined with trees and culverts, is classified as a rural collector road. La.R.S. 48:191. Highways are either arterial or collector. Arterial roads connect metropolitan areas with populations of 50,000 persons or more; collectors provide access to arterials or smaller towns. At the point where the accident occurred, Greenwell Springs Road is straight and has two lanes each of which is 12 feet wide with a one-to-two-foot wide shoulder. The roadside ditch has a fore slope of two to one which means that it slopes two units horizontally to one unit vertically. The large oak tree, into which the Brister vehicle collided, is nine feet from the edge of the pavement.
The date of construction of Greenwell Springs Road is unknown. The first recorded construction was in 1927 at which time the road was given a new gravel surface. Twelve years later, the state paved the highway creating two nine-foot wide lanes of roadway. Then in 1958, the lanes were each widened by a foot, and threefoot wide gravel shoulders were added. Most recently, in 1977, the roadway was again resurfaced, and the lanes were each widened by two feet, making the roadway twenty-four feet wide and each shoulder about a foot in width. At the time of the accident, the surface of the roadway, the markings on it and the surface of the shoulders were in good condition.
Evidence established that the work performed in 1927, 1939 and 1958 complied with all applicable standards then in effect. Dr. Edward J. Rhomberg, an expert in civil and traffic engineering, testified, however, that the renovations made in 1977 were in technical violation of DOTD's standards for overlay and widening of rural roads. These standards require that the horizontal clearance be no less after completion of construction than it was before the construction was begun. Horizontal clearance is the distance between the roadway and roadside objects and is measured from the edge of the pavement. Since the lanes were widened in 1977, the edge of the pavement was extended, and thus the horizontal clearance was reduced.
While, technically, horizontal clearance decreased, in reality, the distance between the highway and roadside objects was not diminished because the crown of the highway, which is the total width from the far edge of one shoulder to the far edge of the other, was not widened. That is, the edge of the shoulder was not brought any closer to the oak tree, and thus the danger to the traveling public was not increased. Since the width of the crown remained the same, Mr. William Hickey, the project development engineer for DOTD, concluded that DOTD was not required to remove the oak tree in questionthat the 1977 improvements did not violate DOTD's standards for overlay and widening of rural roads. Additionally, Mr. Hickey testified that the *1173 standards in effect in 1977 required that each lane be at least eleven feet wide. Since the 1958 renovations had only increased the width of each lane to ten feet, they had to be widened to meet the current standard. In widening the lanes, the edge of the pavement was obviously extended. Thus, any technical violation (reduction in horizontal clearance) was necessary to satisfy the requirement pertaining to lane width.
Dr. Rhomberg also discussed the current standards for construction of new highways and major reconstruction of old ones. Under these standards, each shoulder must be at least six feet wide; the horizontal clearance must be no less than thirty feet, and the fore slope ratio of the drainage ditch must be no greater than four to one. In order to bring Greenwell Springs Road into compliance with these standards, the state would have to acquire a new right of way, fill in the roadside ditch, widen each shoulder by four to five feet, dig a new drainage ditch and remove all obstacles within thirty feet of the roadway. Dr. Rhomberg concluded that because this major reconstruction had not been performed, Greenwell Springs Road was unsafe.
The physical characteristics of Greenwell Springs Road are not unique; many Louisiana roads have narrow shoulders and steep roadside ditches and are lined with trees, culverts, fences and other objects. Dr. Olin K. Dart, an expert in civil and traffic engineering and in accident reconstruction, testified that it would be physically and financially impossible to bring all of the state's roads up to modern standards. Mr. Hickey also believed that the state could not possibly meet such a burden. We agree. For this reason, the failure of DOTD to reconstruct the state's highways to meet modern standards does not establish the existence of a hazardous defect. Dagnall v. Louisiana Department of Highways, 426 So.2d 276 (La.App. 4th Cir.), cert. denied, 433 So.2d 160 (La.1983); Devall v. Morgan, 424 So.2d 522 (La.App. 5th Cir.1982), cert. denied, 427 So.2d 1214 (1983); Usry v. Louisiana Department of Highways, 402 So.2d 240 (La.App. 4th Cir.) cert. denied, 404 So.2d 1259 (La.1981).
Thus, the evidence adduced at trial established that all work done on Greenwell Springs Road prior to 1977 complied with applicable standards then in effect. In 1977, the lanes were widened, and the roadway and shoulders were resurfaced. Although technically the horizontal clearance was decreased, overall the highway was improved and made more safe for persons traveling on it because the lanes of travel were widened and the surface of the road was improved, but the crown of the highway was not brought any closer to roadside objects. At the time of the accident, the surface of the highway and the markings on it were in good condition. Under these circumstances, we find that the stretch of road in question did not present an unreasonable risk of harm, that is, DOTD did not breach its duty to keep Greenwell Springs Road in a reasonably safe condition. Thus, DOTD is not liable to plaintiff for the injuries sustained by Todd. The trial court was clearly wrong in finding otherwise. The court of appeal erred in affirming this finding. We must reverse.

DECREE
For the reasons assigned, the decision of the court of appeal affirming the trial court's judgment is reversed; judgment is rendered in favor of the State of Louisiana, through the Department of Transportation and Development, and against Karen Myers, individually and on behalf of her minor son, Samuel Todd Rodgers, dismissing her suit at her cost.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority's decision accords little or no deference to the factual findings of the previous courts. The DOTD is permitted full relitigation of the facts in this court unlike other litigants who lose on the facts below. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Carter v. Koehring *1174 Company, 283 So.2d 716 (La.1973). I recognize the dire financial condition of our state and the possible inability of the DOTD to maintain highways in a reasonably safe condition. Whether valid grounds exist for protecting the DOTD from the normal effects of civil procedure and delictual law, however, is a question of policy ill suited for resolution in a judicial forum and more appropriate as a subject of legislative consideration.
NOTES
[1] Other defendants named in the petition were State Farm Mutual Insurance Company (the insurer of a car normally driven by Karen Myers and owned by her fiance's mother), Harland Lester Reynolds (the insurance agent) and American Home Assurance Company (Reynolds' errors and omissions insurer). Prior to trial, Karen settled with and released Reynolds and American Home Assurance Company. At the close of plaintiff's case, the trial judge granted State Farm's motion for judgment of dismissal. Thus, DOTD was the sole remaining defendant.
[2] 483 So.2d 1063 (La.App. 1st Cir.1985).
[3] 487 So.2d 433 (La.1986).
[4] La.Civ.Code art. 2317 provides:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
[5] La.Civ.Code art. 2315 provides in pertinent part:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
[6] As we explained in Kent v. Gulf States Utilities, 418 So.2d 493 (La.1982), in a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk. In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage. Thus, in both instances, the claimant must prove that the owner breached his duty to take reasonable steps to prevent injury as a result of the thing's presenting an unreasonable risk of harm.
[7] In La.R.S. 48:1(20)-(21), the legislature has defined "roadway" and "shoulder." "Roadway" means that portion of a highway improved, designed or ordinarily used for vehicular traffic, exclusive of the berm or shoulder. "Shoulder" means the portion of the highway contiguous with the roadway for accommodation of stopped vehicles, for emergency use and for lateral support of base and surface.