518 So.2d 1063 (1987)
Jo-Louise CASHIO
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. CA 86 0644.
Court of Appeal of Louisiana, First Circuit.
October 21, 1987.
Rehearing Denied January 5, 1988.
*1064 Richard J. Ward, Jr., Maringouin, for plaintiff Jo-Louise Cashio.
Robert T. Talley, Asst. Gen. Counsel, Baton Rouge, for defendant State of La., Dept. of Transp. and Development.
Pamela J. Crawford, Kean, Miller, Hawthrone, D'Armond, McCowan & Jarman, Baton Rouge, for defendant Town of Maringouin.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
This is a tort suit for damages arising out of a one car accident involving Jo-Louise Cashio. On March 14, 1984, at approximately 12:00 p.m., Ms. Cashio was driving her 1984 Datsun 260-Z in a northerly direction on Louisiana Highway 77 in the Parish of Iberville, State of Louisiana, when her car left the paved portion of the highway. Upon re-entering the highway, she lost control of her car, crossed the center line and hit a culvert causing her car to flip over. Ms. Cashio contends the shoulder of the road was defective in that the shoulders are below the minimum design standard; that it was too narrow; and, there was a deep downward slope into the ditch, making it unsafe for use.
Ms. Cashio suffered severe injuries as a result of the accident. She filed suit against the State of Louisiana, Through the Department of Transportation and Development (DOTD). The DOTD filed a third party demand against the Village of Grosse Tete (The Village) under a maintenance contract between the DOTD and the Village for maintenance of the roadway and shoulders in the area of the accident.
Trial was held on December 9, 1985, in Iberville Parish. At the conclusion of the trial, the trial judge dismissed DOTD's third party demand against the Village and found that the DOTD was 100 percent at fault for the defective design and/or construction of the shoulder of La. 77. After quantum briefs were submitted, the trial court awarded the plaintiff damages in the amount of $111,308.62. From the judgment, the State of Louisiana, through the DOTD, appeals urging the following assignments of error:
1. The trial judge erred in holding the Department of Transportation and Development liable herein.
2. The trial judge erred in failing to find the plaintiff solely at fault or to apply comparative negligence to the plaintiff's actions, even though specially pled by appellant.
3. The trial judge erred in failing to grant appellant's third party demand against the Village of Grosse Tete.
4. The trial judge erred in awarding grossly excessive damages.

ASSIGNMENTS OF ERRORS NO. 1 & NO. 2
Appellant contends the trial court erred in finding the DOTD liable and in failing to apply the principles of comparative negligence. We agree.
The trial judge attributed 100 percent fault to the DOTD because of the angle of the shoulder and the difference in the levels of the roadway and the shoulder. It is well settled that the DOTD is under a duty to maintain the highways and shoulders in a reasonably safe condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be forseeably placed in danger by an unreasonably dangerous condition. Sinitiere, supra. This duty imposed on DOTD is the same under either strict liability or negligence. See Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).
Aubrey St. Angelo, the Grosse Tete Police Chief, testified that he examined the place where Ms. Cashio re-entered the highway and there appeared to be no more than a quarter of an inch to an inch drop-off between the highway and the shoulder. Gene Moody, a consulting engineer who was presented as an expert in the field of accident reconstruction, testified that from *1065 the photographs presented to him it appeared that the drop-off was approximately three inches at the point where Ms. Cashio attempted to re-enter the highway. Mr. Moody also testified that the drop-off itself was not the single cause of the accident but was merely a contributing factor. According to Moody, what initially caused Ms. Cashio to lose control of her car was the low, narrow shoulder. Moody testified that when Cashio attempted to re-enter the highway, her vehicle was already out of control and the drop-off was an impediment in getting back onto the pavement. Duane Evans, an expert in traffic engineering and accident reconstruction testified on behalf of the plaintiff. According to Mr. Evans, he first visited the site of the accident on June 9, 1984, which is approximately three months after the accident. Mr. Evans testified that in his opinion, the accident was caused primarily by two factors. The first factor was the shoulder of the road. According to Evans, the shoulder was inadequate in that it was too narrow and it sloped too steeply into the ditch. The second factor was the drop-off which was the difference in elevation between the highway and the shoulder at the point Ms. Cashio's vehicle re-entered the roadway.
Duane Evans on direct examination testified that when he examined the place where Ms. Cashio re-entered the highway, he did not find any drop-off which would have contributed to her accident. However, on cross-examination, Evans testified that from the photographs presented into evidence, the highway appeared to have a drop-off of approximately three inches where Ms. Cashio attempted to re-enter the highway.
In the trial court's oral reasons for judgment, he stated that the cause of the accident was the shoulder of the highway and the difference in the elevation between the shoulder and the surface of the road. We cannot say that this finding is manifestly erroneous; however, we do find the trial court committed manifest error in its finding that Ms. Cashio was entirely free from fault in causing the accident on March 14, 1984.
Ms. Cashio testified that she traveled Highway 77 four times a day, five days a week; therefore, she was very familiar with this particular highway. There was no evidence presented to the trial court to explain why or what caused Ms. Cashio to initially run off the highway. Ms. Cashio testified that on the day of the accident, it was a dry, sunny spring day.
Delores Nall testified that on the day of the accident Ms. Cashio drove her car past Ms. Nall's shop on Highway 77, honked her horn and waved. Immediately after Ms. Cashio honked, Ms. Nall testified that she heard a terrible noise and saw dirt or smoke near the highway.
It is well settled that motorists have a duty both to maintain control of their vehicles and to maintain a proper lookout. Motton v. Travelers Ins. Co., 484 So.2d 816 (La.App. 1st Cir.1986). If Ms. Cashio would have been diligent in her duty to maintain a lookout, she would not have strayed from the roadway. For negligence to be actionable it must be a cause in fact and a legal cause of the accident. Sinitiere, supra. The cause-in-fact test requires that but for the conduct, the injuries would not have been sustained. The legal cause test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Sinitiere, supra.
In the instant case, there was a substantial relationship between Ms. Cashio's negligently running off the highway and the resultant damages sustained by her. Because we find that the plaintiff's negligence was a cause-in-fact and legal cause of the accident, we must conclude the trial court committed manifest error in concluding that Ms. Cashio was free from fault in this accident.
Having found both parties negligent, we turn to the matter of apportionment of fault. In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La. 1985), the Supreme Court looked to the Uniform Comparative Fault Act, § 2(b) and Comments (as revised in 1979) for guidelines in apportioning comparative fault. Section 2(b) provides:

*1066 In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed.

Watson, 469 So.2d at 974.
The Supreme Court also noted in Watson that a variety of other factors may influence the respective degrees of fault:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Our analysis of the foregoing factors indicates that Cashio's conduct was the more substantial in causing the accident on March 14, 1984. She testified that she was very familiar with this particular highway because she travelled it on the average of four times a day five days a week. We have testimony indicating that immediately preceding the accident, Cashio was not paying proper attention to her driving but was honking her horn and waving to a friend. The photographs submitted into evidence establish that there were no obstructions on the highway or on the shoulder which precipitated Ms. Cashio's re-entering the highway before she had a chance to apply her brakes and slow down. Had Ms. Cashio kept her car on the highway, the accident would not have occurred.
The DOTD's fault, while it did contribute to the accident, was much less significant than Cashio's. There was conflicting testimony as to the exact measurement of the drop-off from the highway to the shoulder of the road. The trial court concluded that there was a drop-off and this drop-off contributed to the accident. We cannot say this finding is manifestly erroneous.[1]
After weighing all the factors involved in this accident, we assign 25 percent of the fault to the State of Louisiana through the Department of Transportation and Development, and 75 percent of the fault to the plaintiff, Jo-Louise Cashio.

ASSIGNMENT OF ERROR NO. 3
Appellant contends the trial court erred in dismissing the DOTD's third party demand against the Village of Grosse Tete. We do not agree.
The Village of Grosse Tete and the State of Louisiana entered into a maintenance agreement whereby in Article III the Village of Grosse Tete agreed to patch, blade, replace material and otherwise maintain paved and non-paved shoulders. Article IX provides that the municipality (Village of Grosse Tete) is to hold the State of Louisiana harmless for any and all claims for damages to persons or property arising by reason or any negligence attributed to failure of proper maintenance of the village's undertakings in the agreement.
The trial court's findings of fact will not be disturbed by this Court, absent a finding by us that the trial court was manifestly *1067 erroneous. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
The trial court found that the condition of the shoulder resulted not necessarily from maintenance, but apparently from design and construction. We agree. The fault of the State in this accident arose primarily from the drop-off which existed between the highway and the shoulder. The drop-off is not caused by maintenance of the highway and shoulder; but from the design and construction of the highway. For this reason, we do not think the trial court was clearly wrong in dismissing the third party action under the maintenance agreement against the Village of Grosse Tete.

ASSIGNMENT OF ERROR NO. 4
Appellant contends that the trial judge erred in awarding grossly excessive damages.
Before a reviewing court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). We must look first, not to prior awards, but to the individual circumstances of the present case. If we find the trial court abused its discretion, we are required to raise or reduce the award only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc. 341 So.2d 332 (La.1976).
In the instant case, the trial court awarded the plaintiff the following damages:

a. Past pain, suffering and mental anguish $ 20,000.00
 Present and future pain, suffering and
b. mental anguish 60,000.00
 Loss of future earning capacity resulting
 from the permanent partial disability
c. of the body 25,000.00
d. Past medical expenses 3,108.62
e. Loss of wages 3,200.00
 ___________
 TOTAL $111,308.62

In light of the evidence presented at trial, we cannot say the trial court abused its much discretion in awarding these damages to the plaintiff; therefore, this portion of the judgment is affirmed.

CONCLUSION
The judgment of the trial court is reversed insofar as it held DOTD 100 percent liable for the damages to the plaintiff. The judgment is hereby amended to provide for a reapportionment of fault as follows:
Twenty-five (25) percent to State of Louisiana, Through the Department of Transportation and Development and seventy-five (75) percent to Jo-Louise Cashio. The plaintiff is entitled to the $111,308.62 damage award plus judicial interest subject to the reduction of 75 percent. The judgment is affirmed in all other respects. Court costs are to be paid equally by appellant and appellee.
REVERSED IN PART; AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] This case differs from the case of Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986). In the Myers case, the Department of Transportation and Development caused work to be done on a highway, said work leaving the highway technically in violation of the applicable standards. The Supreme Court found, however, that the improvements made the highway safer for persons traveling on it and that the highway did not present an unreasonable risk of harm.

In the instant case, the trial court found that there was a drop-off at the point of re-entry of the Cashio vehicle. The trial judge found that the drop-off contributed to the accident. The drop-off was caused by a recent overlay. The conclusion of the trial court was that the condition of the highway presented an unreasonable risk of harm and that it contributed to the accident.