WICKER, Judge.
The State of Louisiana, Department of Transportation and Development (DOTD) appeals a judgment which found it to be partially at fault and consequently liable to the plaintiff, Harvey Manasco, for the injuries he sustained in an automobile accident. We affirm.
The accident occurred on a rainy day on Highway 48 (River Road) at its intersection with Alliance Street in Kenner. Samuel Poplus, Jr. was driving west in his dump truck; and Manasco was driving east in his van. Another vehicle was stopped in the westbound lane, apparently waiting to turn left. Poplus spotted the stopped car from thirty-five to three hundred feet away, depending on whether his trial or deposition testimony is considered. Poplus apparently waited too long to brake, his brakes then locked, and he eventually ran off onto the right-hand shoulder of the road to avoid hitting the stopped car. When he did so, the rear of his truck swung into the eastbound lane and struck Manasco’s van, injuring him. Manasco sued Poplus, his insurer, DOTD, and the driver of the stopped car.
The trial judge found Poplus to be seventy-five percent at fault because “he delayed taking sufficient braking measures early enough to avoid the accident” and he disregarded “the wet condition of the highway” as it affected necessary braking distances. In addition, the judge found DOTD *1250 to be twenty-five percent at fault because the highway in the vicinity of the accident was unreasonably dangerous. “[It] is insufficient to provide a ‘margin of error’ for ‘safe deviation from the main traffic lanes’ and is therefore ‘intolerably unsafe’ and, consequently, unreasonably dangerous.” The unreasonably dangerous condition was a cause of the accident, furthermore, because “it caused the defendant, Samuel Po-plus, Jr., to remain on the highway until he realized he had no alternative but to attempt to use the unusable shoulder or inflict a crushing blow on the vehicle stopped in his lane of travel.” Stipulated wage loss and medicals, along with pain, suffering, future wage loss and disability, were awarded for a total judgment of $73,314.42. Only DOTD appeals the judgment, and it appeals only liability and not damages.
DOTD specifies three errors:
(1) the conclusion that the highway was unreasonably dangerous;
(2) the conclusion that the condition of the road was causally related to the accident; and
(3) the misapplication by the court of the case of Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986).
A highway safety expert testified for each side at the trial.
Robert Lipp, testifying for Manasco, reviewed the accident report in question as well as numerous others at this location; the paving record of the road; Poplus’ deposition; DOTD documents concerning signs, speed limits, and traffic volume; and DOTD and national[1] highway safety specifications. He also made an on-site inspection of the accident scene. He concluded, “The highway basically is sub-standard for the amount or volume of traffic upon it.” Specific areas in which the roadway was sub-standard were: the lanes were nine and one-half feet wide rather than eleven (national standards) or twelve (DOTD standards); the presence of a tight curve (a two-hundred-and-sixty-foot radius) calls for a roadway width of twenty-six feet, because a truck gets wider as it goes around a curve, and the roadway was only nineteen feet six inches wide; there was no stabilized shoulder, whereas DOTD standards call for an eight-foot shoulder; and the radius of the curve should have mandated a lower speed limit than the posted thirty-five or forty miles per hour. Lipp testified, “with the highway up to standards, it would’ve given Mr. Poplus an opportunity to miss the parked — the vehicle in the middle of the road because of the fact that it could've — there would be a [sic] adequate shoulder.” Lipp also found the signing to be inadequate: a sign warning motorists that the road was sub-standard, now in place, was not there at the time of the accident; and there was no sign indicating that a plant entrance was just over the levee, either of which would “give the motorist a warning of danger or a hazardous condition ...”
On cross examination, although Lipp admitted that this roadway may have simply evolved prior to 1919 rather than having been built by DOTD, he testified that “somewhere along the line the State is obligated to bring this highway up to specifications.” [2]
DOTD called Olin K. Dart as its witness; and he testified that he had reviewed the accident reports; the depositions of the parties; Lipp’s report; and DOTD records concerning signs, traffic count, and maintenance. He too did an on-site investigation. Dart acknowledged that by today’s standards the road was sub-standard. However, “the road as it came out of the system came out at a time when we didn’t have design standards.” He testified that Poplus would have had plenty of time to stop his truck if he had seen the stopped car from three hundred feet away, even considering the wet pavement; and he concluded that the road did not present an *1251 unreasonable risk of harm to a reasonably prudent driver within the advisory speed limit. He also testified that the standards referred to by Lipp and in our statutes apply to repair and reconstruction of roads and not to rehabilitation projects such as overlays.
L.S.A.-R.S. 48:35, dealing with the responsibilities of the Department of Transportation and Development, provides in part:
The office of highways of the Department of Transportation and Development shall adopt minimum safety standards with respect to highway design, construction and maintenance. These standards shall correlate with and, so far as possible, conform to the system then current as approved by the American Association of State Highway and Transportation Officials. Hereafter, the state highway system and all public roads, highways and streets under the jurisdiction of any political subdivision of this state shall conform to such safety standards. The chief engineer of the office of highways may designate those highways as listed in R.S. 48:191 on the effective date of this Act for reconstruction or repair at standards which are less than those as approved by the American Association of State Highway and Transportation Officials, provided however, that no reconstruction or repair shall be done on any highway under this Part which results in a pavement width of less than eighteen feet, and further provided that all reconstruction or repair done under this Part shall be accomplished within the existing right of way.[3]
Louisiana Highway 48 in Kenner is one of those roadways exempted from these standards by L.S.A.-R.S. 48:191. A conclusion that L.S.A.-R.S. 48:35 may be inapplicable, however, does not end the inquiry, since it does not address liability under the general negligence and liability law of L.S.A.-C.C. arts. 2315 and 2317.
While the basis for determining the existence of the duty is different in art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. DOTD’s duty to travelers is to keep the highways and their shoulders[4] in a reasonably safe condition. Whether DOTD had breached this duty, that is, whether the roadway and shoulders at the scene of the accident were in an unreasonably dangerous condition will depend upon the particular facts and circumstances of each case.
Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170, 1171-1172 (La.1986) (citations omitted). The Myers court ultimately ruled that Greenwell Springs Road did not present an unreasonable risk of harm and that DOTD breached no duly to the public. However, we note that the roadway in question in that case was twelve feet wide, although the shoulder was only one foot.
In 1982 the Supreme Court considered another defective shoulder case. LeBlanc v. State, 419 So.2d 853. LeBlanc strayed from the roadway, her wheels dropping off some four to six inches onto a narrow shoulder covered with loose clam shells. She lost control of her car when she tried to reenter the road. The Court addressed the issue of whether this particular risk was protected against by DOTD’s legal duty to maintain highway shoulders and concluded that it was.
If the Department had maintained the shoulder at the same or approximate elevation of the roadway the plaintiff probably would not have lost control of her car.
[[Image here]]
We are of the opinion that the Department was under a duty to protect this plaintiff from the risk which gave rise to her injuries. One purpose of a highway shoulder is to provide a margin of error for the safety of motorists. A highway without a shoulder or one which never *1252 permits safe deviation from the main traffic lanes would be intolerably unsafe.
At 856 (Cited by the trial judge).
This circuit has considered the liability of DOTD where a combination of factors, road width, slickness of the surface, speed limit, and degree of curve, “produced a situation in which accidents were more likely to occur.” Farlow v. Roddy, 478 So.2d 953, 961 (La.App.1985), aff'd 493 So.2d 592 (La.1986).[5] We affirmed the trial court’s judgment against DOTD in that case.
The trial judge in this case had before him expert testimony that the road in question was sub-standard and was a cause-in-fact of the accident. Even DOTD’s expert admitted that the road was sub-standard by today’s standards. We hold, as we did in Farlow v. Roddy, supra at 961, that “[i]t is the province of the trier of fact to decide how much weight to grant conflicting testimony. ...” We find no manifest error in the judgment complained of and consequently affirm. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
AFFIRMED.

. American Association of State Highway and Transportation Officials.

. At one point, the trial judge commented, “I could almost take judicial notice of the fact that it’s a high accident rate on the River Road. I’ve had I don’t know how many scores of cases since I've been here fourteen years, of accidents on that River Road.’’

. The 1984 and 1986 amendments to this statute did not make substantive changes that are relevant to our discussion.

. “Shoulder" is defined as "the portion of the highway contiguous with the roadway for accommodation for stopped vehicles, for emergency use and for lateral support of base and surface." L.S.A.-R.S. 48:1(21) (emphasis added).

. The Supreme Court decisions in Farlow v. Roddy, supra, and Myers v. State Farm Mut. Auto. Ins. Co., supra, were handed down on the same date.