CRAIN, Judge.
The issue presented in this case is whether the Louisiana Department of Transportation and Development (DOTD) is liable for damages resulting from a November 22, 1989 automobile accident. It is contended that liability results from alleged defect in design of a four lane highway in 1950-51. The defect is alleged to create an unreasonable risk of injury. The procedural history is accurately set forth in appel-lees’ brief[1] as follows:
PROCEDURAL HISTORY
This is a suit by Debra M. Hunter for the wrongful death of her husband, Norman Hunter, who was killed in an automobile accident.
Cited as defendants were The Department of Transportation and Development of the State of Louisiana, hereinafter referred to as “DOTD”, Conny D. Rush and his insurer, State Farm Mutual Automobile Insurance Company, and the former uninsured motorist carrier of Norman Hunter, Old Hickory Casualty Insurance Company.
Prior to trial on March 7, 1991, the trial court granted Old Hickory’s motion for summary judgment, which was predicated on the fact that the policy had lapsed, and judgment was rendered in favor of Old Hickory, dismissing plaintiff’s suit against Old Hickory with preju *792 dice. No appeal was taken as to that part of the judgment which is final.
The case was tried March 22, 1991 and April 8, 1991. At trial, proof was introduced that State Farm paid to Debra M. Hunter its policy limits of $25,000.00 and that a restrictive release was executed by Debra M. Hunter in favor of State Farm only with a reservation of rights against the other parties, including Con-ny Rush. At the conclusion of the trial State Farm moved for a dismissal from the main demand of plaintiff and from the third party demand for indemnity or contribution by DOTD. Counsel for plaintiff and counsel for DOTD had no objections to the motion and judgment was rendered in favor of State Farm. The main demand was then taken under advisement by the Trial Court. The issues taken under advisement involve the respective liability of the defendants, DOTD and Conny D. Rush, the apportionment of liability, applicability of comparative negligence and damages.
Judgment was rendered through written reasons for judgment (record pages 82-85) issued April 29, 1991 whereby fault was assessed in the amount of 50% each to both Conny D. Rush and DOTD. Total damages awarded were $529,350.21 and judgment was rendered in favor of plaintiff against DOTD in the amount of $264,675.10 and in an identical amount against Conny D. Rush, subject to a credit for the $25,000.00 previously tendered by his insurer, State Farm.
Judgment was signed on May 28, 1991 (record pages 86-88). A copy is attached as Appendix Exhibit “D”. This judgment incorporated the rendition of judgment on the main demand and the incidental demands inclusive of the dismissal of a petition intervention by Allstate Insurance Company. Allstate’s claim was for property damage incurred by an innocent party, not a party to the lawsuit. This claim had been settled prior to trial.
A Motion for Appeal was filed by DOTD June 25, 1991; the order granting the appeal was signed June 27, 1991 by the Trial Judge.
No answers to the appeal or cross appeals were taken by the other remaining parties in the lawsuit, Debra M. Hunter, the plaintiff, and Conny D. Rush, defendant.
FACTS
The pertinent facts as found by the trial judge were as follows:
Norman Hunter was proceeding westbound on Highway 190 in a pickup truck in the left hand lane of the two lanes for westbound traffic and signaled to make a left turn to Young Avenue. Once Hunter signaled to make a left turn, an unknown vehicle immediately behind Hunter switched to the right lane. The second following vehicle driven by Conny Rush was blocked in the right lane by a vehicle driven by a witness, Stephen Co-meaux, who moved to the right shoulder to allow Rush into his lane. Rush, however, rear ended the Hunter vehicle, which by the time of impact was stopped. After being rear-ended, the Hunter vehicle was propelled forward and the front of his vehicle struck the guardrail at the west end of the median opening. The Hunter vehicle after striking the guardrail then collided with an eastbound vehicle driven by Joyce Schoen. Mr. Hunter died shortly after the accident.
The trial court accepted Stephen Co-meaux’s account of the accident. Comeaux testified that Hunter utilized his left turn signal in a timely manner and was driving at an appropriate speed. He observed that the Rush vehicle was speeding.
The record supports the factual findings of the trial judge.
LIABILITY OF DOTD
.The trial judge further found that U.S. Highway 190 (Highway 190) was originally constructed as a two lane highway in 1932. It was made into a four lane highway in 1951. The 1951 construction was an eleven mile project. Approximately five miles of the project, including the accident site, was constructed with a four foot median. The drawings of the five miles with a four foot median showed a number of side roads *793 including what the trial judge referred to as a “plantation road” which is now Young Avenue, the accident site. In 1965 a guardrail was constructed along the five mile stretch of highway containing the four foot median. The guardrail was lowered in height in 1966.
The trial court found that the 1951 construction which made Highway 190 a four lane highway “constituted a major construction which in effect yielded a new highway.” He further concluded that DOTD “failed to follow prudent and proper design and construction standards by failing to provide a median of sufficient width accommodating turning and crossing traffic on this five mile portion of the project.” According to the trial judge when the construction took place in 1951 DOTD was operating under standards issued in 1946. These standards provided for a forty foot median for highways of the class of Highway 190. Recognizing that the standards were not to be inflexibly applied the Court accepted the testimony of plaintiff’s expert, Mr. Robert Canfield, that circumstances did not justify deviation from a median at least wide enough to accommodate turning and crossing traffic. Accordingly, the trial judge concluded that failure to provide such a median constituted an unreasonable risk of harm. We disagree, and reverse the judgment of the trial court holding DOTD liable.
Under La.C.C. art. 2315 or 2317' the duty of DOTD is to keep the highways and their shoulders in a reasonably safe condition. Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986). In order to show a breach of that duty it must be established that the roadway and/or shoulders were in an unreasonably dangerous condition at the scene of the accident. Myers, 493 So.2d at 1172. Whether the roadway and/or shoulders were unreasonably dangerous at the scene of the accident depends on the facts and circumstances of each case. Myers, 493 So.2d at 1172. The failure of DOTD to bring an existing highway up to standards adopted after construction does not establish the existence of a hazardous defect and is not in itself grounds for the imposition of liability on DOTD. Dill v. State, Dept. of Transp. and Dev., 545 So.2d 994 (La.1989); Myers, 493 So.2d 1170. Failure of DOTD to meet accepted design standards including the requirements of DOTD’s own design manual is not necessarily negligence per se. Bush v. State Through La. DOTD, 542 So.2d 721 (La.App. 4th Cir.1989); Broussard v. Yellow Freight Lines, Inc., 464 So.2d 987 (La.App. 1st Cir.1985). Likewise, renovation made in technical violation of DOTD standards does not necessarily create an unreasonable risk of harm where overall the highway is improved and made safer for persons travelling on it. Myers, 493 So.2d 1170.
Appellees through their expert Dr. Olin K. Dart have put forth the theory accepted by the trial court that a distinction must be made between a major construction which should be termed a construction of a new highway, and reconstruction of an existing highway. They argue that in the case of new construction a deviation from applicable standards is negligence. They further assert that the 1951 reconstruction of U.S. Highway 190 was the construction of a new highway; that according to plaintiffs exhibit 14 and 14A DOTD did not comply with applicable standards for a left turn lane, and consequently the four foot median at the point of the accident creates an unreasonably dangerous condition.
Although we do not necessarily subscribe to appellees theory that deviation from standard is always negligence in new construction, we specifically reject the assertion that different legal concepts should be applied in this case than were applied in Myers and its progeny. Highway 190 was built as a two lane highway in 1932. There is no evidence that it was not constructed at that time according to standards. In 1951, when it was made four lanes the existing two lanes were there and were utilized in the conversion to four lanes. Although Mr. Robert Canfield vacillated as to specific situations, there is general agreement among the experts, and common sense would dictate, that converting heavily traveled Highway 190 from two to four lanes meant an overall improvement of the highway and made it generally safer for *794 persons traveling on it. Working from that basic premise the question then becomes whether the deviation from standards with respect to median created an unreasonably dangerous condition.
According to Myers, when the overall highway is made safer that point must be balanced against the ability of the state to comply with existing standards in determining whether the roadway presents an unreasonable risk of harm. The only evidence of the state’s ability to improve Highway 190 in 1951 and also meet median standards came from Dr. Dart. He testified the cost of the 1951 project as built was 1.1 to 1.2 million dollars. A fifteen foot median would have doubled the cost. A forty foot median would have cost three to five times as much. Certainly such medians would have made it safer for turning and crossover traffic but there is no evidence that the state could have made the improvement at all faced with that additional cost.[2]
There is also unresolved the question of the need to accommodate turning drivers by increased median width at the point of the accident in 1951. When the construction took place there was what the trial court and Dr. Dart referred to as “plantation road” at the point where Young Avenue is presently located. Dr. Dart surmised that this road was probably a private dirt road. There is no evidence that the need existed in 1951 to construct a fifteen to forty foot median to accommodate traffic turning onto the plantation road.
According to Myers, 493 So.2d 1170, and Dill, 545 So.2d 994, in addition to deviation from design standards, the Court must also consider whether lack of proper maintenance and also a failure to properly sign might also combine to create an unreasonably dangerous condition. There is no evidence in the record that the State could have done more in these areas to alleviate the danger to turning motorists. This is especially true in this case where the following motorist was speeding and inattentive.
CONCLUSION
We conclude that a deviation by the State from its design standards in 1951 did not create per se an unreasonably dangerous condition which has existed since that time. Regardless of the terminology given the construction at issue, where it improved the overall condition and safety of an existing highway the principles of Myers, 493 So.2d 1170, are applicable. The evidence does not show that the state could have complied with its design manual for medians for four lane highways in 1951 and still have accomplished the construction, nor does the record reflect the need for such a median, at the point of the accident in 1951. There is also no showing in the record that the State could have maintained the accident site any differently to avoid the deceased left turning motorist being struck from the rear by a speeding and inattentive driver.
Accordingly, the judgment of the trial court is reversed. Appellees are to pay all costs.
REVERSED AND RENDERED.

. Plaintiff/appellee Debra M. Hunter and Defendant/appellee Conny D. Rush filed joint briefs.

. Some evidence was presented that the costs of constructing the barriers would not have been necessary if the wider median had been constructed. However, this occurred some fifteen years after the widening and would not have been a factor in the initial decision to convert Highway 190 into four lanes.