JaCOOKS, Judge.
In these consolidated actions arising from a one-ear accident, the plaintiffs appeal the trial court’s judgment finding the Louisiana Department of Transportation & Development free from fault in causing the mishap. For the reasons hereinafter expressed, we affirm.
FACTS
On April 23, 1993, at approximately 3:30 a.m., there was a one-vehicle accident on Louisiana Highway 29, approximately five miles from Euniee, Louisiana. The driver *586 and owner of the vehicle (a Ford Festiva) was Gerald Deville. At the time of the accident, four passengers were riding in his vehicle: Peter O’Connor, Sebastian Santora, Jr., Troy Lyons and Greg Fontenot. Deville was [¡¡driving from Eunice to Ville Platte when the accident occurred. The group had been to the Purple Peacock, which is a bar in Eunice. Deville lost control of his vehicle as he came to a curve in the road. There was a large, deep ditch located on the northwest side of the highway. While negotiating the curve, Deville slammed on his brakes, skidded along the roadway and shoulder, went over the steep embankment and crashed into the opposite bank of the ditch. The vehicle flipped over and burst into flames. Troy Lyons, Greg Fontenot and Sebastian Santo-ra, Jr., died as a result of the accident. Deville and Peter O’Connor, although suffering serious injuries, survived the accident. The trial court found Deville was operating his vehicle while legally intoxicated at the time of the accident.
The heirs of the decedents filed suits for wrongful death, and Deville and Peter O’Connor filed suits for personal injuries. Named as defendants were the Louisiana Department of Transportation and Development (DOTD), Ford Motor Company[1] and Gerald Deville and his insurer. Plaintiffs settled their claims against Ford. Deville’s insurer filed a concursus suit tendering, therein, the amount of its policy limits. The suits were consolidated and the matter was tried against DOTD, the only remaining defendant.
After trial, the judge found DOTD did not cause or contribute to the accident. While finding the ditch in question was “deep and dangerous,” the trial court weighed this factor against his finding that the ditch’s utility in facilitating drainage in the area was great. The trial court ultimately concluded the negligence of Gerald Deville solely caused the accident and resulting deaths and injuries. Finding no liability on the part of DOTD, the trial judge did not reach the issue of damages. Plaintiffs have appealed the judgment of the trial court, asserting the Lfollowing assignments of error:
1. The trial court erroneously concluded that the roadway/curve and surrounding area within the state’s right of way and control in question was not defective and did not pose an unreasonable risk of harm to the traveling public.
2. The trial court erroneously concluded that the conditions of the roadway/curve and the surrounding area within the state’s control did not cause and/or contribute to causing the accident.
3. The trial court erroneously concluded that the conditions of the roadway/curve and the surrounding area within the state’s control did not cause and/or contribute to causing the injuries and damages incurred by the five occupants of the vehicle in question.
4. The trial court erroneously found that DOTD was in compliance with La.R.S. 48:35 when in fact DOTD failed to conform to the standards of the American Association of State Highways and Transportation Officials (AASHTO).
5. The court erroneously failed to award any damages to the plaintiffs.
STANDARD OF REVIEW
It is well settled that an appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless they are clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). In a tort action against the state, whether based on strict liability or negligence, the plaintiff must show: (1) the property which caused the damage was in the custody of the DOTD; (2) the property was defective because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or constructive notice of the risk; and (4) the defect in the property was a cause in fact of the plaintiffs injuries. Bessard v. State, Dep’t. of Transp. & Dev., 94 0589 (La.11/30/94); 645 So.2d 1134; La.R.S. 9:2800. The analysis under either theory is the same. Campbell v. Louisiana Dep’t of *587 Transp. & Dev., 94-1052 (La.1/17/95); 648 So.2d 898. Plaintiffs have the burden of proving all of the above factors, and thus the failure of any is fatal to the plaintiffs’ case.
ANALYSIS
It is undisputed that DOTD has custody of Louisiana Highway 29. As mandated by La. R.S. 48:21(A), DOTD has a statutory duty to “study, administer, construct, improve, maintain, repair, and regulate” the use of public highways and roads. Fulfillment of this duty necessarily requires that DOTD “adopt minimum safety standards with respect to highway and bridge design, construction, and maintenance.” La.R.S. 48:35(A)(1). Those standards are to correlate with and conform to, as far as possible, the standards approved by the American Association of State Highway and Transportation Officials (AASHTO). Id.
As of the date of this accident, La. R.S. 48:35 provided:
A. (1) The office of highways of the Department of Transportation and Development shall adopt minimum safety standards with respect to highway design, construction, and maintenance. These standards shall correlate with and, so far as possible, conform to the system then current as approved by the American Association of State Highway and Transportation Officials. Hereafter, the state highway system shall conform to such safety standards.
(2) The chief engineer may designate those highways as listed in R.S. 48:191 on the effective date of this Section for reconstruction or repair at standards which are less than those as approved by the American Association of State Highway and Transportation Officials; however, no reconstruction or repair shall be done on any highway under this Part which results in a pavement width of less than eighteen feet, and all reconstruction or repair done under this Part shall be accomplished within the existing right of way.
DOTD cannot, however, guarantee the safety of all travelers. Nor can it be held responsible for all injuries resulting from any risk posed by the roadway or its | ¡¡appurtenances, but only for those caused by an unreasonable risk of harm to others. See Entrevia v. Hood, 427 So.2d 1146 (La.1983). Whether DOTD breached its duty to the motoring public, by knowingly maintaining a defective or unreasonably dangerous roadway, depends on the facts and circumstances of the case. Campbell, 648 So.2d 898.
La. Hwy. 29 is a two-lane roadway classified by DOTD as a rural collector road, which falls within the lowest functional classification. See La.R.S. 48:191. The highway was originally asphalt hard-surfaced in 1949-50. Today, it is a black-top road with a yellow dividing line in the middle. A solid yellow no-passing zone line extends from the beginning to the end of the curve.where Deville lost control of his vehicle. Approximately two-tenths of a mile before the curve a warning sign is present, with a suggested speed of 40 miles per hour. There also are yellow signs with black chevrons to alert drivers of the existence of the approaching curve. The curve lanes are 11 feet in width, and there is a shoulder varying in width from approximately six feet to seven and one-half feet bordering it. The shoulder’s composite consists of a mix of gravel and shell. The record testimony discloses the largest drop from the travel lane to the shoulder was an inch and a half, and the average drop is generally one half inch to an inch. The highway was overlaid and reconditioned in 1979-1980. Neither the width of the travel lanes nor shoulders was changed during the overlay.
Plaintiffs presented the testimony of Jim Clary, an expert in the field of highway design and highway safety, to establish that there were numerous defects in Hwy. 29 at the site of the accident. Clary found the curve warning sign in the northbound lane of traffic was farther from the curve than DOTD’s regulations recommend. He also testified the curve had an excess radius degree; and, therefore, |7it was deficient. He also felt the roadway width was irregular and insufficient; and, there was stress cracking, wear and several other minor defects in the roadway. However, Clary concluded these specific defects were not a substantial cause of the accident.
*588 Clary further testified the ditch along the southbound portion of the highway was a roadside hazard; and, as such, presented an unreasonable risk of harm to motorists. Clary testified that the AASHTO guidelines required the placement of guardrails between the shoulder and the ditch. According to Clary, the required guardrail would have spanned the point where the Deville vehicle ran off the road. Clary also felt the presence of a guardrail would have prevented the De-ville vehicle from entering the ditch. Plaintiffs’ accident reconstructionist, Dale Moore, agreed with this hypothesis.
DOTD presented the testimony of Joseph Blaschke, a civil engineer and expert in traffic engineering and highway design. Dr. Blaschke testified that DOTD is not obligated to follow AASHTO standards unless it undertakes a reconstruction project on the highway. Continuing, Blaschke stated when Hwy. 29 was initially hard-surfaced in 1949 it basically followed the route of the existing gravel road. In his opinion, when DOTD resurfaced the road in 1979, its action constituted nothing more than an “overlay” project and not “reconstruction.” Jim Clary agreed the 1979 overlay was not sufficient to classify it as reconstruction. As such DOTD argues it was not required to utilize AASHTO standards. Blaschke testified further to bring all of the rural collector highways up to current standards simply would not be feasible because it is cost prohibitive. He also testified guardrails serve to deflect vehicles, but their utility can be a trade-off because they sometimes cause deflection back onto the roadway and potentially into an oncoming vehicle. Blaschke voiced doubt as to whether guardrails would have prevented thejginjuries that occurred in this accident.
The Louisiana Supreme Court case of Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986) is of particular relevance here. In Myers, the driver lost control of his vehicle, causing him to run off Louisiana Highway 37 (Greenwell Springs Road), and struck a large oak tree located in a roadside ditch nine feet from the pavement. At the location where the accident occurred, Louisiana Highway 37 had two twelve foot wide lanes, with one to two foot wide shoulders. Highway 37 was first paved in 1939, creating two nine foot wide travel lanes. In 1958, each lane was widened by one foot, and three foot wide gravel shoulders were added. In 1977, the roadway was again resurfaced, and the lanes were widened by two feet each. The shoulders were not widened, resulting in a twenty-four foot wide roadway and one foot wide shoulders.
The supreme court found the work performed in 1927,1939, and 1958 complied with all applicable standards then in effect. However, the renovations made in 1977 were in “technical violation” of DOTD’s then standards for the overlay and widening of rural roads. Despite this “technical violation,” the Supreme Court noted the distance between the highway and roadside objects had not diminished because the crown of the highway had not been widened, and thus, the edge of the shoulder had not been brought any closer to the tree. The court ultimately concluded the danger to the traveling public had not been increased.
While recognizing DOTD violated existing safety standards, the supreme court also noted compliance with these standards would have required the state to acquire a new right-of-way, fill in the roadside ditch, widen the shoulders by four to five feet, dig a new drainage ditch, and remove all obstacles within thirty feet of the roadway. Finding that the physical characteristics of Louisiana Highway [ 937 were not unique in that many Louisiana roads have narrow shoulders and steep roadside ditches and are lined with trees, culverts, fences, and other objects, the supreme court concluded that the physical and financial burden that would be imposed upon the state to bring such roads up to standards was an impossible one. The court stated: “For this reason, the failure of DOTD to reconstruct the state’s highways to meet modern standards does not establish the existence of a hazardous defect.” Id. at 1173. Because it found the roadway presented no hazardous defect, the court concluded DOTD breached no duty owed to the plaintiff. Simply put, the court concluded DOTD has no duty to bring all highways in the state up to modern construction safety standards.
*589 However, the supreme court in subsequent cases cautioned that design standards alone do not determine whether or not a duty exists, and-all the facts and circumstances of each case must be considered. Hunter v. State, Dep’t of Transp. & Dev., 620 So.2d 1149 (La.1993); Dill v. State, Dep’t of Transp. & Dev., 545 So.2d 994 (La.1989). In Dill, the supreme court clarifying its position in Myers, stated:
This court held in Meyers[Myers] that DOTD’s failure to bring an existing highway up to the standards adopted after construction of the highway was not in itself grounds for imposition for liability on DOTD. The Meyers[Myers] decision, however, is not controlling here. Meyers does not stand for the proposition advanced by DOTD that it can escape liability simply by showing that a highway met the existing standards when it was built. The present case turns on the determination of the question whether the condition of the highway constituted an unreasonable risk of injury which caused the accident. Design standards both at the time of original construction and at the time of the accident may be relevant factors for consideration in deciding this issue, but are not determinative of the issue.
Id., at 995-996 (footnote omitted).
| ipPlaintiffs presented testimony to show the curve in question was a dangerous one. It is undisputed that a number of accidents have occurred at this site. Plaintiffs point to the testimony of State Trooper Walter Lee, who testified the subject curve is the most dangerous in the Troop I area. However, Trooper Lee qualified this statement. Relevant portions of his testimony read as follows:
Q: Based on your experience as a State Trooper and your experience with this curve on Louisiana 29, do you have an opinion as to whether it presents a hazard to a motorist traveling north?
A: Ido.
Q: Okay. What is your opinion?
A: It’s a very hazardous curve. In fact, in the Troop I area I can think of no other curve that’s as dangerous as the one that we are referring to today. I do need to qualify that, though. By saying that we have a citizenry who many times drink— they’re intoxicated. And when you combine that drinking with the speed in that curve, you’ve got a very, very dangerous situation.
‡ ‡ ‡ ‡ ‡ ‡
Q: Lt. Lee, because you were reared along that road, Louisiana 29, and because you’ve been a State Trooper most of your adult life, you had occasion to drive many a times through the curve that we’re involved with here, have you not?
A: That’s correct.
Q: And as far as you personally are concerned you have always been able to negotiate this curve at the suggested 40 miles per hour speed?
A: Yes, sir.
Q: And in fact if you had an emergency somewhere you may have driven that a little faster from time to time, is that right?
A: I would.
Q: I was interested in your comment that the area that you have been responsible for as a State Trooper is one where we have a problem with people drinking too much.
A: That’s correct.
1 nQ: Isn’t it true that the accidents you were involved in at this particular site mostly involve people who were either drunk or had been drinking and driving too fast.
A: That’s correct.
Q: And is it your understanding that those are exactly the ingredients that were involved in this particular wreck?
Every expert and witness testified a motorist could safely negotiate the curve at the 40 miles per hour posted speed. Richard Williams, who was DOTD’s accident recon-structionist, conducted speed tests on the curve. He testified a driver would have “no problems” negotiating the curve at 40, 45 and 50 miles per hour. Williams acknowledged there was a minor problem at 55 miles per hour, but it was not until he tested at 65 miles per hour that he actually had to apply *590 brakes to negotiate the curve. We also note the average traffic count on Highway 29 at the time of the accident was 1,661 vehicles per day. Thousands of cars are able to safely negotiate this curve each week without accident.
Plaintiffs, nevertheless, insist DOTD should have placed guardrails in the area. Jim Clary testified the presence of guardrails would have prevented Deville’s vehicle from entering the ditch. Dr. Blaschke, while testifying he could not be sure a guardrail would have prevented entry into the ditch, admitted it was possible. Dr. Blaschke, however, testified that the presence of guardrails, while potentially lessening the severity of accidents, clearly would have led to more accidents because the installed guardrails would have decreased the existing shoulder area. The record revealed guardrails would have occupied 18/4 inches. Additionally, the guardrails would have required the use of 2 more feet of shoulder area to post them. Thus, 3$ feet of usable shoulder would have been eliminated to install the guardrails, leaving anywhere from 2/6 to 4 feet, rather than the previous 6 to Tk feet, in the area where the shoulder rounds the curve. Both parties’ experts 1 i2agreed deciding whether to place guardrails at this location required the State to weigh two risks against each other: Severity of accidents versus more accidents. However, how the State ultimately might balance the scale matters not in this instance because the AASHTO guidelines did not require it to install guardrails at this site. Dr. Blaschke testified DOTD is not under any statutory obligation to utilize AASHTO standards unless it undertakes a reconstruction project on the highway. No such reconstruction project was ever performed. Contrary to plaintiffs’ contention, the overlay project undertaken in 1979-1980 is not a reconstruction. The asphalt surface was redone, but there were no other changes to the configuration of the crown of the highway. The lanes were not widened, nor were the shoulders.
It is well settled the State is not the guarantor of the safety of travelers on the highways, nor an insurer against all injury which may result from obstructions or defects in such highways. U.S. F. & G. Co. v. State, Through Dep’t. of Highways, 339 So.2d 780 (La.1976); Burkett v. Honeyman, 561 So.2d 857 (La.App. 2 Cir.), writ denied, 567 So.2d 613 (La.1990). Rather, it is the State’s duty to construct and maintain the highways in a reasonably safe condition for persons exercising ordinary care and reasonable prudence. Coleman v. Houp, 319 So.2d 831 (La.App. 3 Cir.1975).
This court is not unmindful the families of the decedents have suffered great loss as a result of this tragic accident. However, as the trial court noted, the fact that an off-road condition produces injury and in itself presents a danger does not mean the condition was unreasonably dangerous. Only a condition that the State could reasonably expect to cause injury to a person acting prudently and using ordinary care will give rise to a finding of liability against it. The record | ^substantiates the trial court’s conclusion that Gerald Deville, who had traversed this area numerous times, failed to control his vehicle while operating it under the influence of alcohol and at an excessive speed.[2] These acts of negligence caused the accident and the tragic injuries that followed.
Based on the totality of the evidence, we cannot say the trial court erred in finding-plaintiffs failed to prove by a preponderance of the evidence that the roadway presented an unreasonable risk of harm such that the State bears fault for the accident.
DECREE
For the following reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
PETERS, J., dissents and assigns written reasons.

. The basis for the suit against Ford was that the Festiva had defects in the ignition system which caused the vehicle to catch fire.

. It was agreed by the accident reconstruction-ists that Deville's vehicle was traveling approximately 50 miles per hour when he applied his brakes. The posted speed limit to assure safe negotiation of the curve was 40 miles per hour.