519 So.2d 155 (1987)
Sammy H. WALL,
v.
Everett ALLEMAN, et al.
No. 18980-CA.
Court of Appeal of Louisiana, Second Circuit.
December 23, 1987.
Rehearing Denied January 25, 1988.
Writ Granted March 25, 1988.
Graves, Daye & Bowie by James W. Graves, William T. Allison, Shreveport, for appellee.
C.R. Whitehead, Natchitoches, for Jill Alleman.
John W. King, Baton Rouge, for State of La., DOTD.
*156 Bethard & Davis by J.Q. Davis, Coushatta, for Everett Alleman.
Before HALL, JASPER E. JONES, SEXTON, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This case, now before us for the second time, is an action for personal injuries arising from a two-truck collision. We reversed the trial court's original decision and remanded with instructions to receive expert testimony. See Wall v. Alleman, 488 So.2d 1130 (La.App. 2d Cir.1986). After additional hearings, the trial court entered separate judgments in favor of the plaintiff, Sammy Wall, and the intervenors, Everett and Jill Alleman, and against the defendant, State Department of Transportation and Development ("DOTD"). DOTD now appeals, urging error in the trial court's finding that a defective road shoulder caused the accident and in its failure to find that Everett Alleman's negligence was the sole cause of the accident. Sammy Wall has filed a motion to dismiss the appeal with respect to his judgment. For the reasons expressed, we affirm, and because of this we find it unnecessary to reach the substantial issues posed by the motion to dismiss.
Sammy Wall had been driving his Charlo Food Co. van north on Hwy. 7, five miles north of Coushatta. He heard some cookie boxes fall off a shelf in the back. In order to prevent further breakage, he pulled off the road and parked about five feet from the east edge of the highway. He went to the back of the van and started rearranging the cookie boxes.
Meanwhile, Everett Alleman was driving south on the same highway in a new Peterbilt "bobtail" tractor with his wife, Jill, as a passenger. He was not pulling a trailer. It was a December morning, wet and inclement; the road was slick and the shoulder muddy. Alleman testified that somehow the rear dual wheels of his tractor got off the paved surface and slid onto the soft, muddy shoulder. Attempting to re-enter the highway, Alleman lost control, skidded across the pavement and careened into Wall's cookie van. The van was knocked about 70 feet and totally wrecked; Wall sustained serious injuries. Jill Alleman was also injured in the collision; Everett Alleman claimed property damage and lost wages connected with the wrecked tractor.
Sammy Wall began the litigation by suing Everett Alleman, his employer, the employer's alleged insurer, and DOTD. The case grew quite complex, with numerous incidental actions, most of which are irrelevant for purposes of this appeal. Wall's employer's workers compensation insurer intervened to recover the comp benefits it had paid to Wall. Everett Alleman intervened[1] against DOTD, demanding money for damage to the truck, lost earnings and mental anguish. Jill Alleman intervened against DOTD for her injuries. DOTD answered Wall's suit and third-partied Everett Alleman (along with his employer and insurer for indemnification and contribution). DOTD then answered each intervention and third-partied Jill and Everett Alleman separately for indemnification or contribution. Before trial, Alleman's alleged employer and the employer's insurer settled with Wall and were dismissed as to him.
The first trial, concerning only liability, was held in April 1984. The trial judge's opinion, issued in February 1985, concluded that Sammy Wall, Everett Alleman and Jill Alleman were free of negligence and that DOTD was solely responsible for the accident because the edge rut was a defect and caused the accident. This opinion was not reduced to judgment. At the first trial, the court refused to admit testimony of DOTD's expert witness, citing DOTD's failure to comply with certain discovery orders. LSA-C.C.P. arts. 1469, 1471.
A second trial, in May 1985, concerned the Allemans' damages. By judgment of May 20, 1985, Jill Alleman was awarded a total of $22,308.15 in damages. By judgment of June 12, 1985, Everett Alleman *157 was awarded $13,112.75 in damages. DOTD appealed and we reversed on the discovery issue, ordering the trial court to hear the testimony of DOTD's expert witness. Meanwhile, a third trial was conducted in October 1985 solely on the issue of Wall's damages.
Pursuant to our order, a fourth trial was held on August 22, 1986, this time strictly on the issue of liability and limited to the taking of expert testimony. At the conclusion of this trial the judge ruled orally that the new evidence did not change his original impression of how the accident happened and how the fault should be allocated. He signed judgments in favor of Jill and Everett Alleman on September 29 and October 13, 1986, respectively. On November 12 he signed a judgment in favor of Sammy Wall for $81,432.57.
DOTD filed two motions and orders for suspensive and devolutive appeal, reciting that it was aggrieved by the judgments of September 29 and October 13, 1986. There is no motion and order for appeal of the judgment of November 12, although a notice of appeal attached to one of the orders mistakenly referred to it instead of to the October 13 judgment. In effect, there has been no appeal of Sammy Wall's judgment, although DOTD argues in opposition to the motion to dismiss that it is really appealing from the reasons for judgment orally delivered on August 22, 1986. None of the motions and orders for appeal, which are otherwise specific, mentions the August 22 ruling. There was a similar defect in the previous appeal. Of judgments rendered on May 20 and June 12, 1985, in favor of Jill and Everett Alleman respectively, only the May 20 judgment was appealed. This state of affairs casts considerable doubt as to which, if any, of the trial court's judgments is properly up on appeal.[2] We would be inclined to hold that an unappealed judgment is still within the trial court's jurisdiction. However, because of our substantive determination in the case and the relief to be ordered, we do not need to address this troublesome issue.[3] The motion to dismiss is not considered.

DISCUSSION
The substantive issue is whether the trial court committed manifest error by finding that Everett Alleman was free of fault and that DOTD was liable by virtue of a defect that caused the accident. DOTD has not appealed the issue of quantum. This accident occurred on December 22, 1979, prior to the advent of comparative negligence. LSA-C.C. art. 2323 (prior to LSA-Acts 1979, No. 431).
In order to prevail in a case of strict liability, the plaintiff must prove that the thing which caused the injury was in the care of the defendant, that the thing was defective in that it created an unreasonable risk of harm to another, and that the injuries sustained were caused by the vice or defect. Loescher v. Parr, 324 So.2d 441 (La.1975). We are guided by the manifest error rule, announced in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), under which we must not only find a factual basis for the trial court's findings but make a determination that they are not clearly wrong.
The first element was not an issue in this case. There is no dispute that Hwy. 7 was under the care, custody and control of the state, through the Department of Transportation and Development.
The second element is more complicated. The jurisprudence holds that DOTD had the duty of providing a safe highway shoulder and that this duty encompassed the risk that a careless motorist might inadvertently stray off the paved surface and unexpectedly roll onto a negligently maintained shoulder. Rue v. State Dept. of Hwys., 372 So.2d 1197 (La.1979); LeBlanc v. State, 419 So.2d 853 (La.1982). This duty imposed on DOTD is the same *158 under either strict liability or negligence theories, but under strict liability the plaintiff is relieved of the burden of proving that the defendant knew or should have known of the defect. Kent v. Gulf States Util. Co., 418 So.2d 493 (La.1982). The duty does not extend to a motorist who has knowledge of the defect and a reasonable opportunity to avoid the harm. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). In other words, a moderate degree of carelessness on the part of the driver does not constitute contributory negligence; only a degree of negligence that involved knowledge and failure to avoid the hazard falls outside the score of DOTD's high duty of care.
Everett Alleman testified that the morning of the accident was the first time he had ever driven down Hwy. 7. Although he was relatively new as a truck driver, having bought his Peterbilt and driven it only a few weeks, he had recently taken a concentrated three-week course at a professional truck-driving school and graduated at the top of his class with an offer to teach there. He was also an experienced airplane pilot and flight instructor at NSU. He admitted that his depth perception in the long nose tractor was somewhat "hampered," making it difficult for him to "orientate" himself with the sides of the road. Ex. p. 282. But finding the edge of the road was also hampered by the wet and muddy conditions. According to Alleman, not only was the shoulder muddy with scattered gravel, but mud extended from the shoulder up onto the paved surface, as though other vehicles had tracked it onto the pavement by running off and re-entering. Jill Alleman corroborated this. Ex. p. 369-370.
Everett Alleman explained that when he neared the accident site, there was oncoming traffic in the opposite lane so he steered gently to the right to make room. Then he felt the outside wheels of his rear tandem leave the paved surface and drop with a jolt onto the shoulder. DOTD's expert, Dr. Blaschke, would not accept this explanation, feeling that the rear wheels could not leave the surface unless the front ones had done so first. R. p. 152. By contrast, Sammy Wall's expert, Dr. Moss, felt that the rear wheel could slide off if the driver "instinctively" steered to the left. R. p. 215. This could have happened after the driver swung to the right for oncoming traffic and overcompensated.
Alleman further testified that after he felt himself run off the pavement, he tried to turn gradually back onto the surface, but the wheels kept "hooking" onto the dropoff. Dr. Moss said that when a truck's rear wheels go off the road, the effort to re-enter will cause the truck to swerve to the left or counterclockwise. On remounting the slab, the truck will naturally turn to an angle depending on the depth of the dropoff. A sheer 2-inch drop would throw the truck off by only 2-5 degrees, which would be relatively insignificant. A 4-inch dropoff would cause a deflection of 5-8 degrees. A 6-inch drop would cause a "more troublesome" deflection of 9-14 degrees, and an 8-inch drop would deflect the truck 14-20 degrees. Dr. Moss added that if the slab was lubricated, as with wet mud, it would be even harder to remount. R.p. 192. Dr. Blaschke did not think the rear wheels had actually strayed from the road, but conceded that if this happened, then the truck would veer to the left on re-entering the paved surface. He said, however, that a sheer dropoff of even 4 inches should not affect a large truck tire. He summarized by saying that there were three factors in the typical dropoff case: depth of dropoff, slope of dropoff, and speed of the truck. In this case, he concluded, the depth was not a significant factor.
In the lay testimony, however, both the depth and the slope were contested. Everett Alleman returned to the site a week and a half after the accident. He said that an area about 150 to 250 feet along the road had a dropoff of 6 to 8 inches deep, and was nowhere less than 5 inches deep. He added that the dropoff was even greater on the day of the accident. He took photographs which show drops of varying severity. Although these photographs do not show a ruler or scale for measuring the exact depth, most of them show a fairly *159 steep drop. Sammy Wall also testified that he returned to the site about a month after the accident. He claims to have found the skid marks that Alleman left. He photographed the spot and measured the deepest dropoff as 5 or 6 inches. He added that on the day of the accident, the dropoff was even greater.
Evidence that purported to refute the steepness of the dropoff was supplied by Mr. Sidewand, a local resident and employee of the State Department of Public Safety at the time of the accident. His property faces the site of the accident. He said that on the morning of the accident, the highway was not really wet or particularly muddy. He said he had not noticed a dropoff at the accident site but admitted that he had not paid any particular attention to the condition of the shoulder where the accident occurred. He did state that other stretches up and down the road had severe drop-offs. Trooper Webb, who investigated the accident, did not testify that there was no dropoff; he listed "driver error" as the cause of the accident. He was adamant in his belief that the driver straying off the paved surface caused the accident and that the shoulder played no part, regardless of the dropoff. Finally, DOTD's expert, Dr. Blaschke, visited the site nearly five years after the accident. At that time he could not find any elevation in excess of 1 inch, R.p. 111, but the significance of this observation is lessened by Mr. Sidewand's testimony that DOTD had done some work on the shoulder since the time of the accident. Ex. p. 313. The plaintiff's expert, Dr. Moss, did not visit the site.
The trial court, viewing all this evidence, felt that Everett Alleman's testimony about the road conditions, corroborated by Wall and aided by the photographs, was credible. Ex. p. 208. The trial court's assessment of a witness's credibility is entitled to great deference and, in this instance, does not appear manifestly erroneous. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Davis v. Winningham Datsun-Volvo, 493 So.2d 719 (La.App. 2d Cir. 1986).
Another point vigorously argued at trial was whether the edge of the pavement was beveled or slanted, as opposed to sheer. Dr. Blaschke testified, and Dr. Moss seemed to agree, that a bevel or slant would lessen the hazard of re-entering even a steep roadway. DOTD particularly points to several of the photographs, and cites Sammy Wall's comment that the edge was "broken" and "kind of angled." R.p. 261. The trial court implicitly found that there was no bevel, or if there was, it was not enough to offset the steepness of the dropoff. Our review of the photographs bears this out. Those showing the lowest dropoffs, A-3, A-6 and A-7, appear almost vertical. Those showing the steepest, A-4, A-5 and P-1, show only a slight beveling close to the top of the paved surface. Notably, P-1 distinctly shows the alleged bevel with relation to Alleman's skid marks. We consider this important. Dr. Blaschke thought that a beveled edge would be easy to remount. P-1 shows a skid mark emanating from the very place where the bevel or sloping is most pronounced. Alleman testified that he rode along scrubbing the slab for some distance, unable to climb onto the surface. He apparently would have ridden along until he had to stop but for the sudden access to a slight bevel. At this point he apparently re-entered the paved surface and was pulled off to a slant such as Dr. Moss depicted. The trial court was not in error in his failure to make a finding with respect to the alleged bevel.
We cannot say on this record that the trial court was clearly wrong in finding that there was a significant dropoff. The testimony of Mr. Sidewand and Trooper Webb relied on by DOTD was equivocal and not nearly as detailed and measured as that of Sammy Wall and Everett Alleman. As for the photographs, even the experts admitted they did not accurately depict the depth.[4] The snapshots show various degrees of elevation that the trial court was *160 certainly entitled to find hazardous. See Grappe v. State, DOTD, 462 So.2d 1337 (La.App. 3d Cir.1985), writ denied 466 So.2d 1302 (La.1985). Under these circumstances, the trial court was entitled to find that the dropoff constituted a defect, in that it prevented easy movement from the shoulder to the road surface. See LeBlanc v. State, supra; Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir.1984), writs denied, 450 So.2d 1309, 1311 (La.1984); Thomas v. Jackson, 442 So.2d 1186 (La.App. 2d Cir. 1983), writ denied 445 So.2d 435 (La.1984).
The third element of the plaintiff's case is causation. When Alleman finally remounted the road surface, the truck jerked to the left and swung perpendicular to the road. Alleman testified that he steered in the direction of the skid and braked lightly. He said he got the truck pointed in the proper direction down the road but was in the wrong lane and heading for the parked cookie van, which only then he saw for the first time. He then braked hard and slid into the cookie van. He claimed that upon impact he could not have been going more than 2 m.p.h., but Wall's van was knocked about 70 feet, leading Dr. Moss to place the impact speed at 18 to 25 m.p.h. R.p. 226. Dr. Blaschke estimated it at 35 to 40 m.p.h. R.p. 119. Alleman left skid marks that Trooper Webb measured at 268 feet. According to Alleman, his skid lasted 4 to 6 seconds; Dr. Moss placed it at 2 or 3 seconds. R.p. 154.
Both experts agreed that upon sudden re-entry, the tractor would veer to the left or counterclockwise. This opinion corresponds exactly to Alleman's own account of what happened. Alleman testified he properly steered and applied his brakes for an emergency situation of skidding. The entire skid happened so quickly that even if he had reacted in a minimum time of a second or two, R.p. 120, he could not have avoided striking the parked van. Given Alleman's direct testimony and the corroborative opinions of both experts, the trial court did not err in finding that the defect caused the accident.
The final question is whether Everett Alleman was guilty of contributory negligence. A defendant who urges the defense of contributory negligence has the burden of proving it by a preponderance of the evidence. Esco v. Smith, 468 So.2d 1169 (La.1985); Holman v. Reliance Ins. Cos., 414 So.2d 1298 (La.App. 2d Cir.1982), writ denied 420 So.2d 164 (La.1982). DOTD argues that Alleman was ticketed for failure to maintain control. Alleman conceded that he paid the ticket. Although this is competent evidence of negligence, it is not conclusive. Gregorie v. Hartford Acc. & Indem. Co., 348 So.2d 186 (La.App. 3d Cir. 1977), writs denied 350 So.2d 1210, 1213 (La.1977). We consider it rather inconclusive in light of Alleman's assertion that he paid it chiefly because he would be out of state on the court date and in light of Trooper Webb's opinion that straying off the road, and not a defective shoulder, caused this type of accident. DOTD's duty of maintaining a safe roadway and shoulder extends to a driver who may stray off the road. Rue v. State Dept. of Hwys., supra; LeBlanc v. State, supra. The evidence is sufficient to show that when Alleman found himself in a treacherous situation, he exercised defensive steering and braking. Slightly before impact, he had righted his vehicle. The trial court's finding that Alleman acted prudently is not plainly wrong. Ex. p. 207.
As for whether Alleman was negligent in attempting to re-enter the highway, we find it significant that he had never used this highway before. He cannot be charged with knowledge of the dropoff. Sinitiere v. Lavergne, supra. Furthermore, the jurisprudence recognizes that when a driver strays onto a low shoulder, the prudent response is a gradual re-entry after he has regained control of the vehicle. Pitre v. Aetna Ins. Co., 456 So.2d 626 (La.1984); Grappe v. State, supra; LeBlanc v. State, supra. This is exactly what Alleman testified he attempted to do, except the dropoff was too sheer to permit a gradual entry. After several yards of scrubbing the side of the pavement, the wheels jerked onto the slab and sent the tractor into a skid. The trial court's assessment of the accident was based on Alleman's credible testimony and supported *161 by the expert testimony and the photographs. It is not manifestly erroneous.
For these reasons, the judgments of the trial court are affirmed. Cost of this appeal in the amount of one hundred, ten dollars and 00/100 ($110.00) dollars are assessed to DOTD in accord with LSA-R.S. 13:5112.
AFFIRMED.
LINDSAY, J., dissents with written reasons.
SEXTON, J., dissents for the reasons assigned by LINDSAY, J.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, NORRIS, LINDSAY, SEXTON and HALL, JJ.
Rehearing denied.
LINDSAY, Judge, dissenting.
I respectfully dissent.
The evidence is clear that the shoulder of the highway was not defective. The sole cause of this accident was the negligence of the inexperienced truck driver, Mr. Everett Alleman. Mr. Alleman's testimony shows that he negligently operated his vehicle and caused the accident. He was issued a ticket for, and pled guilty to, failure to maintain control.
The only persons who described a defect in the shoulder are Mr. Alleman, Mrs. Alleman and Mr. Wall. All testified as to varying differences in height between the highway and the shoulder. However, the state's expert witness, the objective testimony of Mr. Sidewand and Trooper Webb, plus the photographs admitted in evidence, reveal that there is no significant difference between the highway and the shoulder. Actually, the highway has a beveled edge, making it easy for a vehicle to move from the shoulder back onto the highway. Contrary to the plaintiff's contentions, the evidence does not show a vertical dropoff from the highway to the shoulder (which would create a barrier-like effect) which would prevent a vehicle which had strayed onto the shoulder from regaining the highway.
The majority opinion discounts the testimony of Mr. Sidewand and Trooper Webb. Nevertheless, they are disinterested witnesses. These independent witnesses testified that they observed no defect in the shoulder and no dropoff on this portion of the highway where the accident occurred. This testimony is corroborated by the photographs. Further, Mr. Alleman did not complain of a shoulder defect after the accident.
The state's expert, Dr. Blaschke, testified that the accident was not caused by a defect in the highway or the shoulder, but was caused by the fault of the driver. Any slight difference in height between the highway and shoulder had no effect on the large wheels of this eighteen wheeler-type tractor truck in moving from the shoulder back onto the highway. The plaintiff's expert, Dr. Tom Moss, who did not view the scene of the accident, testified that he assumed there was a vertical dropoff from the roadway to the shoulder. However, he candidly admitted that if there was a beveled edge on the highway, then anything less than an eight inch vertical dropoff would not be significant.
After considering all the testimony, including the testimony of Mr. Sidewand and Trooper Webb, the photographs which were introduced into evidence which which do not show any significant dropoff from the highway to the shoulder, plus the expert testimony of both Dr. Blaschke and Dr. Moss, I believe that the trial court was clearly wrong in finding a defective condition in the shoulder of this highway sufficient to create liability in the state of Louisiana.
In light of the majority opinion which places sole responsibility for the accident on the state, the other issues presented in this case need not be addressed here. However, if called upon to determine the validity of the state's appeal, I would hold that the appeal was effective and all issues of liability were properly before this court for review.
*162 Because I believe the trial court erred in finding the state solely at fault and in relieving Mr. Alleman of responsibility for this accident, I respectfully dissent.
NOTES
[1] This imprecise procedural device was necessary before the introduction of the cross-claim in 1983. See LSA-C.C.P. art. 1071, Official Revision Comment.
[2] Roche v. Big Moose Oilfield Truck Serv., 371 So.2d 1374 (La.App. 3d Cir.1979), rev'd on other grounds, infra.
[3] See Roche v. Big Moose Oil Field Truck Serv., 381 So.2d 396 (La.1980), esp. fn. 1, cert. dism. 449 U.S. 808, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980); Welch v. Crown-Zellerbach Corp., 365 So.2d 586 (La.App. 1st Cir.1978).
[4] We especially note Dr. Blaschke's decision to make a witness credibility call in reaching his conclusion that the condition of the roadway did not cause the accident. Dr. Blaschke admitted this. R.p. 133.