639 So.2d 461 (1994)
Gerald W. ORILLION, Individually and on Behalf of Shelle Orillion, Cara Orillion, Caleb Orillion and Susan Orillion
v.
Rennie W. CARTER, State Farm Mutual Automobile Insurance Company and State Farm Fire Insurance Company, State of Louisiana Through Department of Transportation and Development.
No. 93 CA 1190.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
Rehearing Denied August 9, 1994.
*463 Dennis Whalen, Baton Rouge, for plaintiffs-appellees Gerald W. Orillion, et al.
John W. Perry, Jr., Baton Rouge, for defendants-appellants State Farm Mut. Auto. Ins. Co., Rennie W. Carter, Sarah Carter Cunningham.
Julie Fuselier, Baton Rouge, for defendant-appellant State of Louisiana, Dept. of Transp. and Development.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
In this personal injury action, the defendants, the State of Louisiana, through the Department of Transportation and Development (DOTD), and the Carters, appeal from an adverse trial court judgment in favor of the plaintiffs, the Orillions.[1] We affirm.

FACTS
On the night of April 7, 1988, Gerald W. Orillion (Orillion) was involved in a motor vehicle accident with Rennie Carter (Carter). The accident occurred on Joor Road near mile post 1.72 in East Baton Rouge Parish. This road had signs indicating that it was a substandard roadway. Orillion's vehicle was traveling in a northerly direction, while Carter's vehicle was traveling south. As Carter's vehicle entered a right curve, the tires on the right side of the vehicle dropped off of the roadway onto the shoulder. When Carter attempted to get back onto the roadway, his vehicle spun out of control and traveled into the northbound lane, colliding with Orillion's vehicle. Both Orillion and Carter were rendered unconscious from the collision; and neither Orillion nor Carter had any recollection of the events immediately preceding the accident. As a result of the collision, Orillion suffered a fracture of his sinuses, a laceration above the eye, and serious damage to both frontal lobes and the right temporal lobe of his brain.
Orillion filed suit individually, and as the father and administrator of the estates of his *464 children, Shelle, Cara and Caleb for the loss of consortium on behalf of each child. In this same suit, Orillion's wife, Susan, petitioned for her loss of consortium. Named as defendants were Carter; State Farm Mutual Automobile Insurance Company, as Carter's liability insurer; State Farm Mutual Automobile Insurance Company, as Orillion's liability and uninsured motorist insurer; DOTD; and Sarah Watson Carter, as mother and legal custodian of Carter, a minor.[2]
In his suit, Orillion alleged that the defendants were liable for the personal injuries he sustained, his loss of employment with Exxon Chemical U.S.A., and the reduction in his employability.
After trial on the merits, the trial court found that DOTD failed to properly maintain the shoulder of the roadway. The trial court further found Carter at fault for driving off of the roadway. The trial court apportioned 50% fault to DOTD and 50% fault to Carter.
The trial court awarded Orillion general damages in the amount of $150,000.00 and damages for impairment of earning capacity in the amount of $250,000.00. Susan Orillion was awarded $10,000.00 for loss of consortium. Caleb Orillion was awarded $5,000.00 for his loss of consortium. The judgment of the trial court limited the liability of State Farm Mutual Automobile Insurance Company to $100,000.00 on the principal portion, but this limitation did not apply to all other allowed coverage under the policy and law, including, but not limited to, interest and court costs.
From this adverse judgment, DOTD and Carter appealed, both urging the following assignments of error:
1.
The trial court's apportionment of fault was manifestly erroneous in light of the evidence presented at trial and jurisprudence.
2.
The trial court's award of damages was an abuse of discretion.
Orillion answered the appeal and in his brief alleged as his lone assignment of error that the trial court abused its discretion in failing to award all of his proven economic damages.

LIABILITY OF DOTD
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. This duty is the same under the strict liability theory of LSA-C.C. art. 2317 as under the negligence liability theory of LSA-C.C. art. 2315. Usually the difference in proof between these theories of liability is that under LSA-C.C. art. 2315, it must be shown that the owner, or person having custody, either knew or should have known of the risk, whereas under LSA-C.C. art. 2317, a claimant is relieved of proving the defendant's knowledge of the risk. Clement v. State, Through Department of Transportation and Development, 528 So.2d 176, 179 (La.App. 1st Cir.), writ denied, 532 So.2d 157 (La.1988). However, LSA-R.S. 9:2800 provides that even under a strict liability theory, when the defendant is a public entity, the plaintiff must prove that the defendant had actual or constructive knowledge of the vice or defect and failed to remedy it within a reasonable time. Under either theory of liability (when the defendant is a state entity), the plaintiff has the burden of proving that: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); (3) the defendant had actual or constructive knowledge of the risk; and (4) the defect in the property was a cause in fact of the resulting injury. Boudreaux v. Farmer, 604 So.2d 641, 650 (La. App. 1st Cir.), writs denied, 605 So.2d 1373, 1374 (La.1992).
*465 The reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty. Nicholes v. St. Helena Parish Police Jury, 604 So.2d 1023, 1027 (La.App. 1st Cir.), writ denied, 605 So.2d 1378 (La.1992).
DOTD has a duty to maintain its highways in a reasonably safe condition and remedy the conditions that make the roadway unsafe. Boudreaux v. Farmer, 604 So.2d at 650. The duty to remedy arises from knowledge of an unsafe condition on the highway. Before DOTD may be held liable for an accident caused by a hazardous or dangerous condition, it must be shown that it had actual or constructive notice of the condition and a sufficient opportunity to remedy the situation or at least warn motorists of its presence, and failed to do so. Naylor v. Louisiana Department of Public Highways, 423 So.2d 674, 682 (La.App. 1st Cir.1982), writs denied, 427 So.2d 439 (La.1983); 429 So.2d 127, 134 (La.1983). Whether a breach of this duty has occurred depends on the particular facts and circumstances of each case. Boudreaux v. Farmer, 604 So.2d at 651.
DOTD has the duty of providing a safe highway shoulder and this duty encompasses the risk that a careless motorist might inadvertently stray off the paved surface and unexpectedly roll onto a negligently maintained shoulder. Wall v. Alleman, 519 So.2d 155, 157 (La.App. 2nd Cir.1987), writ denied, 521 So.2d 1171 (La.1988). This duty does not extend to a motorist who has knowledge of the defect and a reasonable opportunity to avoid the harm. Sinitiere v. Lavergne, 391 So.2d 821, 826 (La.1980).
James M. Duplantis, a Louisiana State Trooper, initially investigated the accident. Duplantis, qualified as an expert in accident investigation, testified that he prepared a diagram of the accident scene and attached it to the original police report. In the diagram, Duplantis drew a schematic of the drop-off area adjacent to Carter's lane of travel. Duplantis stated that this area would normally be a shoulder, but none existed. Duplantis further testified that there was a two to three inch vertical drop-off from just right of the white line marking the outer edge of Carter's travel lane to a sloped asphalt apron. Duplantis measured the slope of that drop off and found that it dropped vertically eleven inches over a two foot eleven inch width. He took the measurement from the edge of the road where it was determined that Carter first dropped his tires off the paved portion of the road. Duplantis testified that when the Carter vehicle attempted to reenter the roadway, his vehicle went into a counterclockwise spin and struck the Orillion vehicle head on.
Trooper Floyd Terrell, was also qualified as an expert in accident investigation. Terrell testified that the physical evidence revealed that the right tires of the Carter vehicle dropped off of the steep edge of the built-up roadway overlay. Terrell stated that the vehicle lost control as it came back onto the southbound lane of traffic, sliding across the roadway into Orillion's lane of travel. Terrell further stated that the physical evidence did not appear to indicate that there was any loss of control by the Carter vehicle until it began coming up the slope of the apron. Terrell testified that he had investigated a prior accident near this area, and had reported the defective shoulder to the State.
Duaine Evans, an expert in traffic engineering and accident reconstruction, was called to testify on behalf of Orillion. Evans testified that there were several causes of the accident in question. Evans stated that the Carter vehicle went off of the travel portion of the roadway onto a sloping surface which was actually asphalt that had been formed from either numerous overlays or an excessive amount of asphalt during one overlay. Evans further stated that the excessive amount of asphalt caused a slope that pulled the vehicle down into the dirt or mud area that was described in the police report. Based upon the photographs, Evans opined that the Carter vehicle came out of what he described as a "ditch area" back onto the roadway, lost control, rotated counterclockwise, *466 and skidded into the northbound lane, where it impacted with the Orillion vehicle. Evans testified that the shoulder had a three-to-one slope and it would be difficult for a vehicle to maintain its position once dropping off onto such a slope, or to regain the roadway. Evans was also of the opinion that the three-to-one slope was extremely dangerous and caused Carter to lose control of his vehicle.
Mr. William Hickey, a civil engineer employed by DOTD, testified as a fact witness for DOTD. Hickey testified that Joor Road had never been reconstructed under DOTD's interpretations of the AASHTO guidelines. Hickey stated that due to continued asphalt overlays, the road surface was built up while the shoulders were not, causing the drop-off and slope along both sides of the roadway.
Dr. Olin Dart, Jr. and Dr. Joseph D. Blaschke testified as expert witnesses on behalf of DOTD. Both were qualified as experts in the areas of accident reconstruction, highway design, and traffic engineering. Dr. Dart and Dr. Blaschke both testified that the area outside of the main travel portion was not the cause of the accident, even if the Carter vehicle did travel onto the dirt shoulder. They stated that the three-to-one slope was traversable and recoverable, and they opined that it was Carter's oversteering or quick jerking of the wheel that caused the accident. Dr. Dart testified that the DOTD's 1976 plans for Joor Road indicated three foot shoulders, surfaced with aggregate material. However, he agreed that the shoulders were not maintained according to the 1976 plans.
The Louisiana Supreme Court developed a two-part test for reviewing factual issues on appeal in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). According to the test, appellate courts may not disturb a trier of fact's factual findings if:
1) The appellate court ... find[s] from the record that there is a reasonable factual basis for the finding of the trial court, and
2) The appellate court ... determine[s] that the record establishes that the finding is not clearly wrong (manifestly erroneous).
Mart v. Hill, 505 So.2d 1120, 1127 (La.1987); Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
When conflicting evidence creates two permissible views of the evidence and the trier of fact's choice between the views is reasonable in light of the entire record, an appellate court may not reverse merely because it would have chosen the alternative view. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Lirette v. State Farm Insurance Company, 563 So.2d 850, 855 (La.1990); Stobart v. State, Through Department of Transportation and Development, 617 So.2d at 883.
After a thorough review of the record, we cannot say that the trial court was manifestly erroneous in its assessment of 50% fault to DOTD. This argument is without merit.

LIABILITY OF CARTER
A motorist's duty of reasonable care includes the duty to keep his vehicle under control. Sinitiere v. Lavergne, 391 So.2d at 826. Further, a motorist has a duty to maintain a proper lookout for hazards which, by the use of ordinary care and observation, he should be able to see in time to avoid running into them. Sinitiere v. Lavergne, 391 So.2d at 821.
For negligence to be actionable, it must be a cause-in-fact and a legal cause of the accident. The cause-in-fact test requires that but for the conduct, the injuries would not have been sustained. The legal cause test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Cashio v. State, Through Department of Transportation and Development, 518 So.2d 1063, 1065 (La.App. 1st Cir.1987).
After a careful review of the record, we find no manifest error in the trial court's apportionment of 50% fault to Carter. Thus, this argument is without merit.

DAMAGES
DOTD and Carter contend that the trial court abused its discretion in the award of damages. Orillion, on the other hand, argues that the trial court abused its discretion by *467 not awarding all of the proven economic damages.

GENERAL DAMAGES
General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d at 654. The primary objective in awarding general damages is to restore the injured party to the state he was in at the time immediately preceding injury. McCray v. Abraham, 550 So.2d 244, 248 (La.App. 4th Cir.1989).
Before a court of appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. See LSA-C.C. art. 2324.1; American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 433 (La. 1991); Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Recently, in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court noted that:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
At trial, the depositions of Dr. Allen S. Joseph, Orillion's neurosurgeon, were introduced as exhibits. In his oral reasons for judgment, the trial court was particularly impressed with Dr. Joseph's testimony. The trial court noted that Dr. Joseph was Orillion's treating physician, and had considerably more expertise regarding the organic part of the brain than the psychiatrists who testified. The trial court found Dr. Joseph's impulse control diagnosis to be a reasonable explanation of why Orillion was unable to continue to perform his duties at Exxon.
In his July 11, 1990 deposition, Dr. Joseph testified that Orillion suffered a closed head injury with an associated laceration above the right eye and a fracture through the wall of frontal sinus. Dr. Joseph stated that intercranially, Orillion suffered multiple brain contusions that did not require surgery. Dr. Joseph further testified that Orillion was clearly going to have a residual effect on the function of his brain. He stated that the areas damaged controlled memory, judgment, affect, and personality. Dr. Joseph further stated that Orillion had a very real injury to the brain that could be measured by the CT scan and, in part, by examination and by experiences of other patients. Dr. Joseph testified that he was not sure whether Orillion was going to gain 50% or 95% of his intellectual capacity. Dr. Joseph further noted that individuals with head injuries are prone to have interpersonal relationship problems.
In the September 28, 1992 deposition, Dr. Joseph testified that he was of the firm belief that Orillion's behavioral problems were explainable, at least in part, by the head injury that he sustained in the accident. He testified that people with personality problems before such an accident are the ones who are at higher risk of disintegration of their ability to control their basic impulses, particularly the more negative ones. Dr. Joseph testified that a common feature of head injury is a loosening of impulse control. Dr. Joseph could not explain why Orillion's personality changes did not manifest themselves until two years after the accident.
Dr. Phillip Louis Cenac, qualified as an expert in the field of psychiatry, testified on behalf of Orillion. Dr. Cenac testified that he first saw Orillion upon referral from his attorney on April 28, 1992. After taking a history and examining the medical records of *468 Orillion, he diagnosed Orillion's problem as organic personality syndrome with frontal lobe injury. He stated that with this problem, Orillion lacked the ability to modulate his affect and was subject to episodes of anger and oppositional behavior. Dr. Cenac further noted that Orillion's impulses were near to expression and he had cognitive impairment. Dr. Cenac considered Orillion's impairment to be permanent.
The deposition of Dr. William C. Bonefield, an expert in the field of psychiatry, was also offered into evidence. Dr. Bonefield testified that he first saw Orillion on January 30, 1992, on referral from Dr. Carol Barlow, the medical director at Exxon. Dr. Bonefield was of the opinion that, although it was possible that Orillion's brain injury exacerbated his personality traits, he thought that the evidence for that conclusion was minimal. He felt that the accident was not the best explanation for Orillion's problems at work and he did not think Orillion was medically disabled.
After a thorough review of the record, we conclude that the trial court did not abuse its discretion in the award of $150,000.00 in general damages to Orillion. Having determined that there was no abuse of discretion, we need not resort to a review of prior cases.

IMPAIRMENT OF EARNING CAPACITY
The trial court awarded Orillion $250,000.00 for his loss of earning capacity. Orillion contends that the trial court failed to award him the discounted value of his lost income, estimated to be in excess of $650,000.00[3].
An award for impairment of earning capacity is not predicated only upon the difference between a person's earnings before and after a disabling injury but also encompasses his loss or reduction of earning capacity.
In determining an injured person's net economic loss caused by impairment of earning capacity, one of the factors to be considered is the availability of reasonable employment opportunities for which the claimant is suited by education, experience and physical capacity.... Other facts which may be considered in fixing awards of impairment of earning capacity are age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and the inflation factor.... However, before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made by the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. (Citations omitted.)
Valentine v. Wells, 540 So.2d 344, 349 (La. App. 1st Cir.1988), writ denied, 546 So.2d 178 (La.1989).
Orillion returned to work at Exxon after the accident, but was terminated approximately two years after the accident occurred. Orillion contended that he was disabled because of a personality disorder directly related to injuries he sustained in the accident.
In its oral reasons for judgment, the trial court reviewed the employment history of Orillion at Exxon, before and after the accident occurred, and apparently concluded that Orillion contributed to his problems with Exxon.
The record reveals that Orillion suffered from a personality disorder before the accident occurred. There was also testimony indicating that Orillion did not have problems at work until two years after the accident occurred. This testimony, along with the testimony of the medical experts, supports the trial court's conclusions. Thus, we cannot say that the trial court was manifestly erroneous in the award of $250,000.00 for loss of earning capacity. This argument is without merit.

*469 CONCLUSION

For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to DOTD in the amount of $878.93 and to Carter in the amount of $878.92.
AFFIRMED.
NOTES
[1] State Farm Mutual Automobile Insurance Company was granted a dismissal of its appeal by this court on February 2, 1994.
[2] Two defendants, State Farm Fire Insurance Company and Charles R. Carter, were dismissed from this suit prior to trial.
[3] This amount of damages was established through the testimony of Dr. Rice, an economist whose testimony was entered into the record by stipulation.