J2SHORTESS, Judge.
On November 28,1992, on Louisiana Highway 309 in Lafourche Parish, a vehicle driven by Melanie A. Frey (Frey) crossed the center line and collided head-on with a vehicle driven by James C. Clement (Clement). Both Frey and Clement sustained serious injuries in the accident. Clement suffered organic brain damage and was interdicted; his mother, Janice G. Clement (Mrs. Clement), was named his euratrix.
Mrs. Clement filed suit on Clement’s behalf against Frey, Frey’s liability insurer, Louisiana Indemnity Company (LIC), and the Louisiana Department of Transportation and Development (DOTD). Clement had been living with Charlene B. Thibodaux (Thi-bodaux) for six years before the accident, and they had two children. Thibodaux joined in Mrs. Clement’s suit as natural tutrix of the minor children Brittany Renee Clement and Ashley Elizabeth Clement, seeking damages on their behalf for loss of consortium with their father. McDermott Incorporated (McDermott) intervened, seeking to recover hospital, medical, and weekly indemnity benefits paid to Clement.[1]
Frey filed a separate suit against DOTD. LIC filed a concursus proceeding, depositing its policy limits into the registry of the court and impleading Mrs. Clement, Thibodaux, and McDermott. The three suits were consolidated for all purposes.
After a bench trial, the court found DOTD and Frey were 95% and 5% at fault, respectively. The court found Frey’s total damages were $142,283.55, Clement’s damages were $4,465,488.84, and the children’s damages were $150,000.00 each. The award against LIC was limited to the amount ^deposited, and McDermott was awarded judgment against Clement on the intervention.
DOTD has appealed these judgments, assigning three assignments of error, all of which relate to liability.

Assignment of Error A

The trial court found this accident was caused by Frey negligently allowing her vehicle to stray onto the shoulder of the road, encountering an edge rut or drop-off, and losing control as she tried to reenter the highway. DOTD contends the trial court was manifestly erroneous in finding Frey strayed off onto the shoulder and in finding the drop-off influenced the behavior of Frey’s automobile when it attempted to reenter the highway.
DOTD relies on the testimony of the state police officers who investigated the accident that they found no physical evidence that Frey left the roadway. The investigation was led by a young and inexperienced state trooper, Jason C. Bergeron. Bergeron had graduated from the state police academy eight months before the accident, had been on his own for approximately three months, and had investigated only two major accidents. He was assisted by three other state police officers, Lieutenant Wayne J. Garner, who took photographs and supervised, Trooper Bryson C. Williams, who took some measurements and photographs, and Trooper Todd Toloudis, who gave statement forms to the eyewitnesses and asked them some questions.
Bergeron was unable to talk to either Clement or Frey following the accident because of their injuries. He, Garner, and Williams walked along the edge of the roadway looking for physical evidence that Frey had driven on the right shoulder but found nothing. However, the investigation was hampered by pouring rain, approaching *1344 nightfall, and, as shown by the photographs introduced into evidence, numerous vehicles parked along the shoulder.
UBergeron testified that although the other troopers were there when he checked the shoulder, their vehicles were not parked on the shoulder when he looked for evidence. He stated he would have asked that the vehicles be moved if they were in the way. Trooper Williams testified, however, that he would simply have looked beneath the vehicles. All of the troopers testified they found no tire marks of any kind on the compacted shell shoulder, not even marks made by the state police vehicles, the ambulance, or the eyewitnesses’ vehicles.
The troopers also reported no positive statements by the eyewitnesses that Frey had driven onto the shoulder. These eyewitnesses, Hubert J. Daigle, Edward V. Jackson, and Welton Keyes, had extricated the unconscious Clement from his vehicle in six feet of swamp water. Keyes stated he jumped in the water without thinking about the fact that he could not swim. Although Toloudis testified the witnesses seemed pretty clear about what happened, Jackson stated he was wet and cold, and Keyes said he was upset. Keyes testified he tried to show the troopers where Frey ran off the road, but they did not acknowledge what he showed them. He also stated he called Williams after the accident and volunteered to show him where Frey ran off the road. However, Williams testified Keyes did not volunteer this information.
The trial court’s findings that Frey drove onto the shoulder, where her right front tire fell into a rut, and that she lost control when she suddenly reentered the highway are supported by the positive testimony of Frey, Daigle, and Jackson. Frey testified she felt the right front wheel suddenly drop and knew it was no longer on the highway. Dai-gle was waiting on a side road for traffic to clear before entering Highway 309. There were no obstructions to his view. He testified he witnessed Frey’s right front tire leave the highway and was positive she lost control when she tried to reenter the highway. Keyes was in a vehicle ahead of Frey. | gHe watched the accident in his rearview mirror. He could see the front end of Frey’s car very well, including the front tires. He was positive that her right front tire left the roadway and that she lost control when she jerked the car back onto the road.
If there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993). The trial court’s finding based on the unequivocal testimony of three witnesses, two of whom had no interest in the litigation whatsoever, was certainly a permissible view and thus was not clearly wrong. This assignment of error is without merit.

Assignment of Error C

DOTD contends the trial court was clearly wrong in finding it had actual, as well as constructive, notice of the condition of the shoulder of Highway 309. That highway is a narrow two-lane road with no edge striping and shell shoulders ranging from one to three feet in width. The shoulders slope down to the Chacahoula Swamp on either side. It is undisputed that on the date of the accident, there were ruts along the edge of the paved surface ranging from two to five inches deep, many with a tabletop effect, i.e., an abrupt drop-off from the pavement into the rut. Stan L. DiGiovanni, the parish highway superintendent for Lafourche Parish, testified that when an edge rut becomes two inches deep, it has priority for immediate repair. Unfortunately, “immediate repair” in Lafourche Parish may take as long as a month because of a shortage of materials, manpower, and equipment.
DOTD states in brief that there is no evidence in the record to support the trial court’s finding that it received a complaint regarding the shoulders of Highway 309 and thus had actual notice. However, DOTD’s answers to Mrs. Clement’s interrogatories, which were introduced into evidence at trial, *1345 | fjshow that DOTD received a complaint of “low shoulders” on October 26,1992, approximately one month before the accident.
Furthermore, there was ample evidence DOTD had constructive notice of the condition of the shoulders. DiGiovanni testified he drives the parish roads and inspects them himself. He stated he had probably driven on this road the week before the accident but did not notice the ruts. During the two and one-half month period before this accident, DOTD road crews had mowed these shoulders, sprayed herbicide on them, and spent several hours patching potholes on Highway 309. DiGiovanni testified that if the crews notice edge ruts while performing other maintenance, they are to inform him. He apparently was not so notified, as no repairs had been done on the shoulders of Highway 309.
Three independent witnesses who worked in the area of the accident and traveled Highway 309 frequently also testified. George M. Borskey testified there were three- to five-inch drop-offs which had been there more than six months. Margie H. Thibodaux testified five- to six-inch drop-offs had existed for more than six months and possibly a year. Mark Richard testified the area immediately next to the shoulder was “quite extensively lower” than the shoulder itself and had been that way for more than six months.
Based on the copious evidence that the edge ruts had existed for a considerable period of time, certainly long enough for DOTD employees to notice the defective condition, and that DOTD had even had a complaint about the condition of the shoulders, we find the trial court was not clearly wrong in holding that DOTD had notice of the condition of Highway 309. This assignment of error is totally without merit.

Assignment of Error B

Finally, DOTD contends the trial court erred in apportioning fault 95% to DOTD and 5% to Frey. The apportionment of fault is a factual determination which will |7not be disturbed on appeal unless it is clearly wrong. If such a finding is determined to be clearly wrong, a de novo review of fault must be made. Cornish v. State, 93-0194, pp. 13-14 (La.App. 1st Cir. 12/1/94), 647 So.2d 1170, 1182.
In determining apportionment of fault, the court should consider the conduct of each party at fault and the extent of the causal relation between the conduct and the damages. The factors to be considered include (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985).
DOTD has a duty to provide a safe highway shoulder, and this duty encompasses the risk that a careless motorist might unexpectedly stray onto a negligently maintained shoulder. Orillion v. Carter, 93-1190 (La. App. 1st Cir. 6/24/94), 639 So.2d 461, 465, writ denied, 94-2289 (La. 11/18/94), 646 So.2d 384. A motorist such as Frey has a duty to keep her vehicle under control at all times. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Orillion, 639 So.2d at 466. There is no dispute in this case that both parties breached their duties. DOTD contends, however, that the trial court was clearly wrong in finding its fault was significantly greater than Frey’s fault.
Applying the Watson analysis, we first note that Frey was familiar with Highway 309. Through simple observation she must have known it was a curving, narrow road with very narrow shoulders which sloped down into a swamp. She also knew the road was wet. Although she testified she was not aware of the edge ruts, she must have been aware it was dangerous to stray onto the shoulder. Despite this knowledge, she drove *1346 forty to Isfifty miles per hour on a highway slickened by rain and carelessly allowed her right front wheel to stray onto the shoulder.
Once she had strayed onto the shoulder, she admittedly panicked. Frey’s recollection of reentering the highway was vague, but Keyes testified she “jerked [the car] back” onto the highway and never had control after that point. A.J. McPhate, Mrs. Clement’s accident reconstruction expert, testified that while Frey’s encountering the edge rut was a primary component of her losing control, her steering input was also involved. Frey’s actions in carelessly driving onto the shoulder and jerking the car back onto the highway created a risk of injury to herself and to other motorists.
DOTD likewise knew that Highway 309 was a bad road and that significant edge ruts were a danger. DiGiovanni testified edge ruts of two inches or more in depth are considered defects. DOTD’s actions in failing to repair the defective condition created a risk that motorists would be injured when they strayed onto the rutted shoulder.
Factor three is inapplicable here, as is factor five. DOTD was obviously not proceeding in haste, and Frey was in no hurry as she returned home after taking her daughter for a hair cut.
The final factor, number four, is whether either party had a superior capacity to avoid the accident. After reviewing the facts, it appears the capacities of DOTD and Frey to avoid the accident were equal. The accident might have been averted had DOTD repaired the shoulder more promptly, but it would also have been averted if Frey had either stayed on the paved portion of the highway or, once she strayed onto the shoulder, slowed down and reentered the highway when it could be done in safety.
In light of our Watson analysis, we find the trial court was clearly wrong in apportioning fault 95% to DOTD and only 195% to Frey. DOTD was clearly not nineteen times more at fault than Frey; we find their fault was equal.[2] We thus amend the judgments to apportion fault 50% to DOTD and 50% to Frey. In all other respects, the judgments of the trial court are affirmed. Appeal costs of $1,119.50 are assessed 50% to DOTD and 50% to Frey.
AMENDED, AND AS AMENDED, AFFIRMED.

. The parties stipulated prior to trial that McDer-mott was subrogated to the rights of the Clement plaintiffs for the full amount of medical expenses ($401,696.49) and indemnity benefits ($8,650.00) paid.

. We note that in many recent cases with similar facts, fault has been apportioned equally between DOTD and the driver who strays onto the shoulder. See Cornish v. State, 93-1094 (La.App. 1st Cir. 12/1/94) 647 So.2d 1170; Orillion v. Carter, 93-1190 (La.App. 1st Cir. 6/24/94), 639 So.2d 461, writ denied, 94 — 2289 (La. 11/18/94), 646 So.2d 384; Durant v. State, 93-1028 (La.App. 1st Cir. 4/8/94), 636 So.2d 1022, writ denied, 94-1654 (La. 10/7/94), 644 So.2d 637; Morris v. Louisiana Dept. of Transp. & Dev., 93-924 (La. App. 5th Cir. 4/14/94), 635 So.2d 774, writ denied, 94-1618 (La. 9/30/94), 642 So.2d 864; Poche v. State Through the Department of Transportation and Development, 93-0369 (La.App. 1st Cir. 3/11/94), 633 So.2d 913, writ denied, 94— 0851 (La. 5/13/94), 637 So.2d 1071; Jenkins v. State, 91-2285 (La.App. 1st Cir. 5/28/93), 619 So.2d 1188, writ denied, 93-1746 (La. 10/15/93), 625 So.2d 1058.